*772
 
 OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 In this appeal, we consider whether water rights may be transferred separately from the property to which they are appurtenant without prior severance under NRS 533.040. We also consider whether the anti-speculation doctrine adopted by this court in
 
 Bacher v. State
 
 Engineer
 
 [2]
 
 limits the ability to acquire a security or ownership interest in a water right separately from the land to which the right is appurtenant. Because NRS 533.040 and the anti-speculation doctrine focus on maintaining water’s beneficial use, not its ownership, we conclude that such transfers are not limited by either NRS 533.040 or the anti-speculation doctrine.
 

 Finally, having determined that water rights are freely alienable, we address appellant Adaven Management, Inc.’s argument that, even though the water rights at issue had been sold before Adaven bought the land to which they were appurtenant, it nevertheless owns the water rights because they were purchased with the land and without notice of the prior sale. We conclude that Adaven has failed to demonstrate that a genuine issue of material fact exists concerning whether it had notice of respondents’ prior recorded interest in the water rights at issue. Therefore, we affirm the district court’s grant of summary judgment in this quiet title action.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 In 1998, E.A. Collins Development Corporation purchased 520 acres of Nye County, Nevada, land and the appurtenant water rights from Perry and Norma Bowman, who had used the land and water for agricultural purposes.
 
 [3]
 
 The water rights purchased included approximately 1,185 acre feet of Permit 22735, which is at issue in this case.
 
 [4]
 
 After the purchase, E.A. Collins allowed the
 
 *773
 
 Bowmans to remain on and farm the property while it took preliminary steps toward developing the land.
 

 In 1999, E.A. Collins received a loan from respondent Commercial Federal Bank (CFB), pledging by deed of trust several parcels of land and water rights as security. The security included Permit 22735 but not the land to which it was appurtenant. CFB recorded the deed of trust in Nye County that same year.
 

 One and a half years later, following E.A. Collins’s bankruptcy, CFB foreclosed on the secured property. At the foreclosure sale, CFB purchased the property, and then, on March 3, 2001, it recorded in Nye County a trustee’s deed upon sale. The foreclosure sale included the Permit 22735 water rights but not the land to which the water rights were appurtenant. Thus, as of March 3, 2001, the Permit 22735 water rights had been transferred to CFB. CFB then sold Permit 22735 and the other property that it had acquired at the foreclosure sale to its wholly owned subsidiary, respondent Mountain Falls Acquisition Corporation (MFAC), and MFAC recorded a special warranty deed in Nye County on June 17, 2002. Neither CFB nor MFAC claim that they filed a report of conveyance for Permit 22735 with the State Water Engineer at the time they acquired the permit or anytime thereafter.
 

 After the date of the foreclosure sale, in 2001, Adaven purchased from E.A. Collins the land to which Permit 22735 was appurtenant by a deed that included “[a]ll water rights relating to, upon, benefiting, belonging or appertaining to the real property”; Adaven recorded the deed in Nye County on December 18, 2001. Seven months later, in July 2002, Adaven filed a report of conveyance for Permit 22735 with the State Water Engineer.
 
 [5]
 
 Adaven then filed an application with the State Water Engineer to change the use of the water from agricultural to quasimunicipal to allow Adaven to begin developing home sites on the land to which Permit 22735 was appurtenant.
 

 The instant dispute arose when CFB learned of Adaven’s asserted ownership interest in Permit 22735 and, on behalf of MFAC, wrote to the Department of Water Resources, asserting its interest in Permit 22735. In response to the dispute, the State Water Engineer indicated that he would take no further action regarding Permit 22735 until title was quieted. Adaven then filed a district court complaint to quiet title. MFAC answered the complaint, counterclaimed against Adaven, and moved for summary judgment. After
 
 *774
 
 a hearing, the district court granted MFAC summary judgment, and Adaven now appeals.
 

 DISCUSSION
 

 We review district court orders granting summary judgment de novo.
 
 [6]
 
 Summary judgment is appropriate if, after viewing the record before the district court in the light most favorable to the nonmoving party, ‘ ‘no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.”
 
 [7]
 
 Whether an issue of fact is material is controlled by the substantive law at issue in the case, and a factual dispute is genuine if “the evidence is such that a rational trier of fact could return a verdict for the nonmoving party.”
 
 [8]
 

 Water rights are freely alienable property interests separate from the land to which they are appurtenant
 

 Adaven argues that NRS 533.040 and the anti-speculation doctrine adopted by this court in
 
 Bacher
 
 v.
 
 State Engineer
 

 [9]
 

 prevent E.A. Collins from validly pledging Permit 22735 as security for a loan without also pledging the land to which Permit 22735 was appurtenant or seeking severance of the water right from the land. We have previously held that water rights are a separate “stick” in the bundle of property rights.
 
 [10]
 
 However, we have never considered whether water rights are freely alienable without regard to the land to which the water rights are appurtenant or the ability of the transferee to put the water to beneficial use. We now conclude that neither NRS 533.040 nor the anti-speculation doctrine limits the alienability of water rights.
 

 NRS 533.040 does not require severance of appurtenant water rights before the water rights become separately alienable
 

 Adaven argues that transferring water rights separately from the land to which they are appurtenant, either by pledging them as security or selling them outright, amounts to severing the water rights from the land, which act is governed by NRS 533.040 and allowed only with approval of the State Water Engineer when cer
 
 *775
 
 tain conditions are met.
 
 [11]
 
 As Adaven contends, NRS 533.040(1) provides that beneficially used water is “deemed to remain appurtenant to the place of use.” NRS 533.040(2) allows water rights to be severed from the land to which they are appurtenant and put to beneficial use elsewhere, but only when certain conditions, not at issue here, are met. Thus, when water is appurtenant to land, the owner of the water right has the right to use the water to benefit that land.
 
 [12]
 
 But, contrary to Adaven’s assertion, nothing in NRS 533.040 prevents the transfer of water rights ownership to someone other than the owner of the land; the statute governs the place of the water’s use. Therefore, the term “appurtenant” in NRS 533.040 refers to where the water right may be put to beneficial use, not ownership. Because the transfer of ownership to water rights does not allow the new owner to automatically use the water at a different location, that transfer does not amount to a severance controlled by NRS 533.040.
 

 In this case, when E.A. Collins purchased the land and water rights from the Bowmans, it arranged for the Bowmans to continue using the Permit 22735 water to benefit the land to which it was appurtenant. It then pledged Permit 22735 as security on a loan, which led to CFB’s purchase of Permit 22735 at the foreclosure sale, and finally to CFB’s later sale of Permit 22735 to MFAC. None of these changes in ownership altered where Permit 22735 could be put to beneficial use, and therefore, no severance as contemplated by NRS 533.040(2) occurred.
 

 The anti-speculation doctrine does not limit an entity’s ability to acquire water rights from a private owner
 

 In
 
 Bacher,
 
 this court adopted Colorado’s anti-speculation doctrine, which, as articulated by this court, “precludes speculative
 
 *776
 
 water right acquisitions without a showing of beneficial use.”
 
 [13]
 
 The anti-speculation doctrine was first espoused by the Colorado Supreme Court in
 
 Colorado River Water Conservation v. Vidler
 
 Tunnel.
 
 [14]
 
 In that case, Vidler applied for a right to store 156,238 acre feet of water from the Colorado River.
 
 [15]
 
 To obtain the appropriation it sought, Vidler was required to prove that it had ‘‘an
 
 intent
 
 to take the water and put it to beneficial use.”
 
 [16]
 
 Vidler planned to use 2,000 acre feet of water to irrigate land it owned but did not have definite plans to put the remaining portion of the water to beneficial use and had not entered into any contracts committing third parties to definite beneficial uses.
 
 [17]
 
 Because selling water rights to make a profit at some point in the future was not a beneficial use,
 
 [18]
 
 the court held that the appropriation was valid only for the 2,000 acre feet of water for which Vidler demonstrated a definite beneficial use, irrigating its own land, and rejected the appropriation with respect to the additional 154,238 acre feet Vidler requested.
 
 [19]
 

 After
 
 Vidler,
 
 the Colorado courts have applied the anti-speculation doctrine to many situations, each of which require a determination of whether a water right will be put to beneficial use.
 
 [20]
 
 However, in Colorado, the anti-speculation doctrine does not prevent a property owner from selling to a third party his or her
 
 *777
 
 right to draw water.
 
 [21]
 
 Thus, the anti-speculation doctrine in Colorado focuses on the use of water, not ownership.
 

 Likewise, in
 
 Bacher,
 
 we applied the anti-speculation doctrine to a situation requiring the demonstration of beneficial use.
 
 [22]
 
 That case concerned an application for an interbasin transfer of water.
 
 [23]
 
 We noted that interbasin water transfers are subject to the beneficial use requirement and that a statutory “need” requirement reflected the beneficial use policy.
 
 [24]
 
 We held that, to demonstrate need, the transfer application had to “specify the intended beneficial use of the appropriation.”
 
 [25]
 
 Applying the anti-speculation doctrine, we concluded that an entity that was not intending to put the appropriated water to use itself nonetheless had demonstrated need when it showed a contractual or agency relationship with the party who intended to put the water to beneficial use.
 
 [26]
 
 We thus adopted the anti-speculation doctrine as a limitation on an entity’s ability to demonstrate beneficial use when it did not have definite plans to put water to beneficial use or a contractual relationship with an entity that had such plans. We did not adopt the anti-speculation doctrine as a limit on the free alienability of water rights,
 
 [27]
 
 and now we clarify that the anti-speculation doctrine by itself does not limit transfers of water rights ownership.
 

 Therefore, neither NRS 533.040 nor the anti-speculation doctrine limited E.A. Collins’s ability to offer Permit 22735 as security on the loan from CFB separately from the land to which it was appurtenant or CFB’s ability to thereafter buy and sell the water right. We next consider whether Adaven was a bona fide pur
 
 *778
 
 chaser for value who took title to Permit 22735 when it purchased the land to which it was appurtenant.
 

 Because CFB had properly recorded its interest in Permit 22735 before Adaven took title to the land, Adaven had constructive notice and did not take title to those water rights
 

 Adaven next argues that the district court erred in granting summary judgment for MFAC because genuine issues of material fact exist as to whether Adaven had notice of CFB’s interest in Permit 22735 when it took title to the land to which Permit 22735 was appurtenant. Adaven argues that it did not have constructive notice of Permit 22735’s mortgage or sale because a reasonable record search would not have revealed CFB’s interest in Permit 22735. MFAC responds that because the deed of trust from E.A. Collins granting a security interest in Permit 22735 to CFB was recorded in October 1999 and the trustee’s deed upon sale was recorded in March 2001, Adaven had constructive notice of CFB’s claim when it purchased the land in December 2001. We agree.
 

 In Nevada, water rights must be transferred by deed, and such deeds must be acknowledged and “[rjecorded in the office of the county recorder of each county in which the water is applied to beneficial use and in each county in which the water is diverted from its natural source.”
 
 [28]
 
 A deed so recorded “impart[s] notice of the contents of the deed to all persons at the time the deed is recorded, and a subsequent purchaser or mortgagee shall be deemed to purchase and take with notice of the contents of the deed.”
 
 [29]
 
 If, however, a deed has not been properly recorded, a subsequent purchaser of water rights for value without actual or constructive notice of a previous purchaser’s interest in the water rights who properly records his or her deed before any previous purchaser is entitled to the water rights.
 
 [30]
 

 The county recorder maintains recorded deeds, including those transferring water rights.
 
 [31]
 
 By statute, a county recorder is re
 
 *779
 
 quired to keep indices of all deeds arranged by the names of the grantors and grantees.
 
 [32]
 
 A prospective purchaser of land may search those indices to ensure that the person attempting to sell the property has clear title to it. To search the indices, the prospective purchaser would first search the grantee index for the purported owner’s name to ascertain when and from whom the purported owner received the property.
 
 [33]
 
 Using that name, the purchaser would check the grantee index for the names of each previous owner, thus establishing the “chain of title.”
 
 [34]
 
 The purchaser must then search the grantor index, starting with the first owner in the chain of title, to see whether he or she transferred or encumbered the property during the time between his or her acquisition of the property and its transfer to the next person in the chain of title. Whether or not a purchaser of real property performs this search, he or she is charged with constructive notice of, and takes ownership of the property subject to, any interest such a title search would reveal.
 
 [35]
 

 Adaven argues that a search of the grantee-grantor indices would not have revealed CFB’s interest in Permit 22735 for three reasons: (1) the grantor listed on the trustee’s deed upon sale was Stewart Title of Nevada, not E.A. Collins; (2) the deed of trust was only intended to, and would only be interpreted to, encumber the water rights appurtenant to the encumbered land; and (3) the deed of trust did not include the assessor’s parcel number for the land to which Permit 22735 was appurtenant. Construing the factual record in the light most favorable to Adaven, we conclude that Adaven has failed to demonstrate a genuine issue of material fact.
 
 [36]
 

 Adaven’s first argument disregards the undisputed fact that CFB recorded the deed of trust by which E.A. Collins pledged Permit 22735 as security for a loan. The deed of trust was indisputably within the chain of title and would have been revealed by a search of the grantee-grantor indices. Even if the trustee’s deed upon sale
 
 *780
 
 of the property was not within the chain of title,
 
 [37]
 
 the existence of the deed of trust within the chain of title was sufficient to require Adaven to make further inquiry, and therefore, Adaven was charged with notice of what would have been revealed.
 
 [38]
 

 Adaven next argues that the deed of trust did not clearly encumber Permit 22735. Adaven argues that the language of the deed conveyed interests only in water rights that were appurtenant to the land being encumbered. However, the deed of trust clearly states that it encumbers the Nye County property described in exhibit A to the deed and the water rights described in exhibit B to the deed. Exhibit B is a list that clearly includes Permit 22735. Although Adaven insists that it should not be charged with notice of an interest listed only on the thirteenth page of a single-spaced document, we disagree. When the first page of a deed provides that the deed conveys water rights and that the water rights are described in a clearly marked exhibit, the deed is not unclear because a searcher has to turn to page thirteen to read the description of the water rights conveyed.
 

 Finally, Adaven argues that CFB failed to comply with NRS 111.312 by failing to include the assessor’s parcel number for the land to which Permit 22735 was appurtenant on the first page of the deed of trust. We conclude that NRS 111.312 requires deeds conveying real property interests to display the assessor’s parcel numbers only for the transferred property.
 
 [39]
 
 Neither party argues
 
 *781
 
 that Permit 22735 was assigned its own parcel number, and the deeds by which CFB acquired Permit 22735 did not transfer the real property to which it was appurtenant. Therefore, NRS 111.312 did not require the deed to include a parcel number for Permit 22735 or the land to which it was appurtenant.
 

 Because CFB complied with the recordation requirements, Adaven had constructive notice of Permit 22735’s mortgage and sale. No genuine issue of material fact exists concerning whether a search of the grantee-grantor indices would have revealed the deed of trust encumbering Permit 22735. Upon discovering the deed of trust, Adaven had a duty to inquire concerning that encumbrance, and thus, Adaven is charged with notice of what that inquiry would have revealed: the trustee’s deed upon sale.
 

 The difficulty of searching for transfers of water rights separate from the land to which they are appurtenant is a reflection of the system in place for recording those transfers. We note that recipients of transferred water rights are required to file a report of conveyance with the State Water Engineer;
 
 [40]
 
 however, under the current system, failure to do so has no effect on a subsequent purchaser’s notice of the transfer. The system of documenting water rights transfers could be greatly improved, but until then, the difficulty that Adaven had in finding a reference to CFB’s or MFAC’s interests in Permit 22735 does not affect whether it had constructive notice. Therefore, MFAC validly owns Permit 22735, and summary judgment for CFB and MFAC was appropriate.
 

 CONCLUSION
 

 Summary judgment for MFAC was appropriate because no genuine issue of material fact existed regarding Adaven’s notice of CFB’s interest in Permit 22735, and neither NRS 533.040 nor the anti-speculation doctrine limit the free alienability of water rights as separate property. Therefore, we affirm the district court’s summary judgment.
 

 Gibbons, C. J., Maupin, Douglas, Cherry and Saitta, JJ., concur.
 

 [2]
 

 122 Nev. 1110, 146 P.3d 793 (2006).
 

 [3]
 

 Water rights are “appurtenant” to land when they are “by right used with the land for its benefit.”
 
 Black’s Law Dictionary
 
 103 (6th ed. 1990).
 

 [4]
 

 In the initial sale, the Bowmans retained the rights to 50 acre feet of water under Permit 22735 and to 40 acres of the land to which Permit 22735 was appurtenant. They later obtained the rights to an additional 240.24 acre feet of water under the permit. Although we refer to Permit 22735 throughout this opinion for convenience, we consider only the approximately 1,185 acre feet of water that is the subject of this appeal.
 

 [5]
 

 NRS 533.384(1) requires “[a] person to whom is conveyed an application or permit to appropriate any of the public waters, a certificate of appropriation, an adjudicated or unadjudicated water right or an application or permit to change the place of diversion, manner of use or place of use of water” to file with the State Water Engineer a “report of conveyance,” which includes information regarding title to the water right and the place of its use. The State Water Engineer, under NRS 533.386, uses the report of conveyance to determine whom to treat as the owner of the water right.
 

 [6]
 

 Wood v. Safeway, Inc.,
 
 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).
 

 [7]
 

 Id.
 
 at 731-32, 121 P.3d at 1031.
 

 [8]
 

 Id.
 
 at 731, 121 P.3d at 1031.
 

 [9]
 

 122 Nev. 1110, 146 P.3d 793 (2006).
 

 [10]
 

 Dermody
 
 v.
 
 City of Reno,
 
 113 Nev 207, 212, 931 P.2d 1354, 1358 (1997).
 

 [11]
 

 NRS 533.040 reads, in pertinent part:
 

 1. Except as otherwise provided in this section, any water used in this State for beneficial purposes shall be deemed to remain appurtenant to the place of use.
 

 2. If at any time it is impracticable to use water beneficially or economically at the place to which it is appurtenant, the right may be severed from the place of use and be simultaneously transferred and become appurtenant to another place of use, in the manner provided in this chapter, without losing priority of right.
 

 [12]
 

 Dermody,
 
 113 Nev. at 209 n.l, 931 P.2d at 1356 n.l. We note that
 
 Dermody
 
 incorrectly quotes and attributes the definition of “appurtenant” used therein to
 
 Mattix v. Swepston,
 
 155 S.W. 928, 930 (Tenn. 1913); that definition may be correctly attributed to
 
 Black’s Law Dictionary
 
 103 (6th ed. 1990).
 

 [13]
 

 122 Nev. at 1119, 146 P.3d at 799.
 

 [14]
 

 594 P.2d 566, 568-69 (Colo. 1979),
 
 superseded in part and affiimed in part by statute,
 
 1979 Colo. Sess. Laws 1366, 1368-69,
 
 as recognized in Matter of Bd. ofCty. Com’rs,
 
 891 P.2d 952, 959-61 (Colo. 1995).
 
 But see City of Thornton v. Bijou Irrigation Co.,
 
 926 P.2d 1, 37 (Colo. 1996) (“Although
 
 Vidler
 
 has most often been cited as defining the anti-speculation doctrine, we did not articulate a new legal requirement in that case, but rather merely applied longstanding principles of Colorado water law.”).
 

 [15]
 

 Vidler,
 
 594 P.2d at 566-67.
 

 [16]
 

 Id.
 
 at 568.
 

 [17]
 

 Id.
 
 at 567.
 

 [18]
 

 Id.
 
 at 568-69.
 

 [19]
 

 Id.
 
 at 569-70.
 

 [20]
 

 See, e.g., Ground Water Com’n v. North Kiowa-Bijou,
 
 77 P.3d 62, 80 (Colo. 2003) (holding that the anti-speculation doctrine applies to application for determination of a Denver Basin designated ground water use right);
 
 Upper Black Squirrel Creek v. Goss,
 
 993 P.2d 1177, 1184 (Colo. 2000) (“Intent to appropriate for beneficial use is a necessary factor in the Commission’s decision whether to grant a well permit application: Colorado’s anti-speculation doctrine applies.”);
 
 Municipal Subdistrict v. OXY, USA, Inc.,
 
 990 P.2d 701, 708 (Colo. 1999) (“[Hjexennial diligence applications are subject to the anti-speculation doctrine.”);
 
 City of Thornton v. Bijou Irrigation Co., 926
 
 P.2d 1, 20, 39 (Colo. 1996) (holding that, with some modification, the anti-
 
 *777
 
 speculation doctrine applied to a municipality’s application for change of use);
 
 Jaeger v. Colorado Ground Water Com’n,
 
 746 P.2d 515, 523 (Colo. 1987) (holding that the anti-speculation doctrine applied to appropriations in designated ground water basins).
 

 [21]
 

 Bayou Land Co. v. Talley,
 
 924 P.2d 136, 149 (Colo. 1996);
 
 see also Nielson
 
 v.
 
 Newmyer,
 
 228 P.2d 456, 458 (Colo. 1951) (‘‘[A] water right is a property right separate and apart from the land on which it is used. . . . The land for which it was appropriated or on which it has been used may be conveyed or held without the water, and the water may be conveyed or held without the land, or any part of the land may be conveyed together with any part of the water right and the remainder be retained.” (citations omitted)).
 

 [22]
 

 See
 
 122 Nev. 1110, 1119-20, 146 P.3d 793, 799 (2006).
 

 [23]
 

 Id.
 
 at 1113, 146 P.3d at 795.
 

 [24]
 

 Id. at 1116-17, 146 P.3d at 797. The “need” requirement for an inter-basin transfer stems from NRS 533.370(6)(a), which requires an applicant for an interbasin water transfer to demonstrate “the need to import the water from another basin.”
 

 [25]
 

 Bacher,
 
 122 Nev. at 1120, 146 P.3d at 799.
 

 [26]
 

 Id.
 
 at 1118-20, 146 P.3d at 798-99.
 

 [27]
 

 Id.
 
 at 1119-20, 146 P.3d at 799.
 

 [28]
 

 NRS 533.382(3).
 

 [29]
 

 NRS 533.383(1).
 

 [30]
 

 See
 
 NRS 533.383(2)(d) (“An application or permit to change the place of diversion, manner of use or place of use of water, that has not been recorded as required by NRS 533.382 shall be deemed void as against a subsequent purchaser who in good faith and for valuable consideration purchases the same application, right, certificate or permit, or any portion thereof, if the subsequent purchaser first records his deed in compliance with NRS 533.382.”).
 

 [31]
 

 See
 
 NRS 247.120(l)(a) (“[E]ach county recorder shall . . . record separately ... the following specified documents: (a) Deeds, grants, . . . transfers and mortgages of real estate, [and] releases of mortgages of real estate.”);
 
 *779
 
 NRS 247.150(1) (“Each county recorder shall maintain two separate indexes in his office for the separate alphabetical recordation of the various classes of documents specified in NRS 247.120.”).
 

 [32]
 

 NRS 247.150.
 

 [33]
 

 11
 
 Thompson on Real Property
 
 § 92.05(a)(3) (David A. Thomas, ed., 2002).
 

 [34]
 

 Black’s Law Dictionary
 
 defines “chain of title” as a “[r]ecord of successive conveyances, or other forms of alienation, affecting a particular parcel of land, arranged consecutively, from the government or original source of title down to the present holder.”
 
 Black’s Law Dictionary
 
 229 (6th ed. 1990).
 

 [35]
 

 See
 
 Snow v. Pioneer Title Ins. Co.,
 
 84 Nev. 480, 484-86, 444 P.2d 125, 127-28 (1968).
 

 [36]
 

 See
 
 Wood
 
 v.
 
 Safeway, Inc.,
 
 121 Nev. 724, 731-32, 121 P.3d 1026, 1031 (2005).
 

 [37]
 

 We note that, under NRS 247.150(5), the county recorder is required to index such a deed under the name of the original trustor, in this case E.A. Collins. Therefore, the trustee’s deed upon sale should have been within the chain of title, and we only assume that it was not because of the posture of this case.
 

 [38]
 

 See
 
 Snow,
 
 84 Nev. at 485-86, 444 P.2d at 127-28.
 

 [39]
 

 2001 Nev. Stat., ch. 59, § 1, at 478, provides:
 

 1. The county recorder shall not record with respect to real property, a notice of completion, a declaration of homestead, a lien or notice of lien, an affidavit of death, a mortgage or deed of trust, or any conveyance of real property or instrument in writing setting forth an agreement to convey real property unless the document being recorded contains:
 

 (a) The mailing address of the grantee or, if there is no grantee, the mailing address of the person who is requesting the recording of the document; and
 

 (b) The assessor’s parcel number of the property at the top of the first page of the document, if the county assessor has assigned a parcel number to the property. The county recorder is not required to verify that the assessor’s parcel number is correct.
 

 In 2003, the Legislature amended NRS 111.312 to expressly state that “[a]ny document relating exclusively to the transfer of water rights may be recorded without containing the assessor’s parcel number of the property.” 2003 Nev.
 
 *781
 
 Stat., ch. 451, § 47, at 2781. Although this amendment does not apply to this action because the deeds in question were recorded in 1999 and 2001 and the amendments were prospective, if the amendment applied, we would reach the same result. 2003 Nev. Stat., ch. 451, § 67, at 2792.
 

 [40]
 

 NRS 533.384.