THE OFFICE OF THE STATE ENGINEER, STATE OF NEVADA, AND R. MICHAEL TURNIPSEED, STATE ENGINEER, APPELLANTS, v. WILLIAM W. MORRIS, RESPONDENT.

No. 21368

October 24, 1991                                              819 P.2d 203

*Frankie Sue Del Papa,* Attorney General, *Margaret A. Twedt,* Deputy Attorney General, Carson City, for Appellants.

*Miles, Pico & Mitchell* and *Keith J. Tierney,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This case involves an application to appropriate ground water. The application was filed with the State Engineer by respondent, William W. Morris, on December 15, 1987. Respondent was seeking to appropriate water for a proposed residential subdivision in Lovell Canyon in Clark County. The application was denied by the State Engineer on March 25, 1988, and respondent petitioned for judicial review on April 25, 1988. Eventually, the district court reversed the ruling of the State Engineer and granted respondent's application. The State Engineer now appeals the order of the district court.

The State Engineer found that the point at which the proposed water appropriation was to be made (the point of diversion) was within the Pahrump Valley Ground Water Basin. He concluded that the Pahrump Valley Ground Water Basin is currently overappropriated. Further, he reasoned that approval of respondent's application would aggravate a basin-wide overdraft and would interfere with existing rights and therefore be detrimental to the public interest.

The experts who testified on behalf of respondent and the State Engineer relied on various surveys and reports regarding the ground water of Pahrump Valley and the surrounding areas. The State Engineer seems to have relied heavily upon United States Geological Survey (USGS) Water-Supply Paper 2279 prepared by James R. Harrill.[1] In support of his position, respondent relies primarily on the expert testimony and report of Robert C. Broadbent. Mr. Broadbent is an engineer and geologist with broad experience in hydrology. His report concludes that ground water pumping at the proposed point of diversion will not affect the areas of Pahrump Valley where the most ground water pumpage currently occurs.

---

[1] Much of the dispute between the parties involves this report and the State Engineer's reliance on it. Respondent seems to contend that the proposed point of diversion is not actually included in the area discussed in this report and that therefore the State Engineer's reliance on this report was improper. Although the proposed point of diversion is not within the "model area" specifically shown in most of Harrill's maps, it is within the broad study area addressed in Harrill's report. This broad study area was originally designated in USGS Water-Supply Paper 1832 prepared by Glenn T. Malberg in 1967.

Respondent appealed the decision of the State Engineer to the district court. Following briefing and oral argument the district court reversed the ruling of the State Engineer, concluding that the findings of the State Engineer were clearly erroneous and constitute an arbitrary and capricious abuse of discretion. We disagree.

Appellant contends that the district court wrongfully substituted its own judgment for the judgment of the State Engineer and that the decision of the State Engineer was supported by substantial evidence. Title 48 of the Nevada Revised Statutes gives the State Engineer the authority to appropriate water upon the filing of applications. Under NRS 533.370(3)[2] the State Engineer must deny applications when there is no unappropriated water in the proposed source or when the proposed use conflicts with existing rights or is detrimental to the public interest.

In reviewing findings of the State Engineer we have stated that "neither the district court nor this court will substitute its judgment for that of the State Engineer: we will not pass upon the credibility of the witnesses nor reweigh the evidence, but limit ourselves to a determination of whether substantial evidence in the record supports the State Engineer's decision." Revert v. Ray, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979).

Under NRS 533.450(9)[3], decisions of the State Engineer are presumed to be correct upon judicial review. In interpreting this statute we have held that, "[w]hile not controlling, an agency's interpretation of a statute is persuasive." State v. State Engineer, 104 Nev. 709, 713, 766 P.2d 263, 266 (1988) (citation omitted). In reviewing an order of the State Engineer, we are bound by the same standard of review as the lower court. Under this standard, we are to determine whether the evidence upon which the engineer based his decision supports the order. State Engineer v. Curtis Park, 101 Nev. 30, 32, 692 P.2d 495, 497 (1985).

The district court appears to have applied the correct standard of review. The district court specifically held that the findings of

---

[2]NRS 533.370(3) provides:

Where there is no unappropriated water in the proposed source of supply, or where its proposed use or change conflicts with existing rights, or threatens to prove detrimental to the public interest, the state engineer shall reject the application and refuse to issue the permit asked for. Where a previous application for a similar use of water within the same basin has been rejected on these grounds, the new application may be denied without publication.

[3]NRS 533.450(9) provides: "The decision of the state engineer shall be prima facie correct, and the burden of proof shall be upon the party attacking the same."

the State Engineer were "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record and incident thereto constitute an arbitrary and capricious abuse of discretion." The district court's disagreement with the State Engineer's findings generally centers around two issues: (1) whether the proposed point of diversion is within the "Pahrump Valley Ground Water Basin" and therefore hydrographically connected to the areas in which substantial ground water has already been appropriated; and (2) whether the proposed appropriation will have an adverse effect on the ground water basin and existing water rights.

The district court found that the State Engineer "ignored that the point of diversion sought for the appropriation is not within the Pahrump basin . . . ." The specific conclusion reached by the State Engineer in this respect was that:

> Although water does not recharge the Manse Fan area [north central portion of Pahrump Valley] it does ultimately flow into the Pahrump Ground Water Basin. Consequently, the State Engineer finds that the area of origin of recharge from the Spring Mountain for Manse Fan and Lovell Canyon are different but the final destination of recharge is the Pahrump Ground Water Basin.

Appellant contends that this language indicates that the State Engineer found that the proposed point of diversion was within the Pahrump Valley Ground Water Basin and that the overappropriation of water in that basin justifies the denial of respondent's application. We agree. This conclusion of the State Engineer is supported by Harrill's report which includes the proposed point of diversion within the northeastern boundary of the study area and therefore within the Pahrump Valley Ground Water Basin as it is discussed throughout the report.

Respondent argues that because the State Engineer found that water from the proposed point of diversion does not recharge the areas of greatest use in the north central portion of the Pahrump Valley, there is not the necessary connection to justify denial of the application. Respondent's expert, Mr. Broadbent, concluded that water pumpage at the proposed point of diversion in Lovell Canyon will not affect the north central portion of Pahrump Valley. Respondent attacks the Harrill report as unreliable because it is based upon data accumulated only through 1975. Further, respondent claims that the area of pumpage studied by the Harrill report does not include the proposed point of diversion.

The exact boundaries of the Pahrump Valley Ground Water

Basin cannot be definitively determined from any of the evidence presented. It is clear that the proposed point of diversion in Lovell Canyon is within the boundary of the study area examined in the Harrill report; however, it is not altogether clear that this entire study area is within the ground water basin. None of the detailed maps ("model boundaries") of the Harrill report include the proposed point of diversion. In fact the proposed point of diversion is four miles to the east of the "model boundaries" of the Harrill report.

At the very least, water from the proposed point of diversion flows into the Pahrump Ground Water Basin. This fact is admitted to by respondent's expert, Mr. Broadbent, in his testimony. Mr. Broadbent states that, "Water . . . will flow down Lovell Canyon and then infiltrate into Pahrump Valley at the southern-most extent of the Pahrump Valley Ground Water Basin." It is clear that the ground water which flows down Lovell Canyon is at least temporarily within the Pahrump Valley Ground Water Basin, before it continues its flow to the southwest. This fact and the fact that the proposed point of diversion is within Harrill's study area are sufficient to support the State Engineer's decision that appropriation at the proposed point of diversion will affect the existing water rights in the Pahrump Valley.

The exact amount of water that can be withdrawn from the Pahrump basin without adversely effecting future use is not entirely clear. Harrill concluded that the maximum amount of natural discharge that can be feasibly captured is about 19,000 acre-feet per year. The State Engineer refers to this as the perennial yield and uses it as the maximum amount of withdrawal above which overappropriation occurs. The maximum steady-state pumping rate which takes into account return flow of water as well as other factors was found to be 26,000 acre-feet in 1975 by Harrill. Regardless of which number (19,000 or 26,000) is used as the maximum amount of withdrawal, it is clear that the Pahrump Valley Ground Water Basin is currently overappropriated.

Although only 19,174 acre-feet of water were pumped from the basin in 1987, the latest recorded year, more than 80,000 acre-feet in water rights are outstanding in the basin. This potential pumping of 80,000 acre-feet clearly amounts to overappropriation and is a proper basis for the State Engineer's finding that the basin is currently overappropriated.

Whether the proposed point of diversion is actually within this overappropriated Pahrump Valley Ground Water Basin is a more difficult question. We conclude that the State Engineer's finding

that the point of diversion in the instant case is within the overappropriated groundwater basin is supported by substantial evidence. Based upon the fact that the location in question is within the Harrill and Malberg study areas and the fact that even respondent's expert, Mr. Broadbent, concedes that groundwater from the Lovell Canyon flows into the southernmost portion of the Pahrump Valley Ground Water Basin, the State Engineer's findings and his denial of respondent's application are supported by substantial evidence.

Accordingly, we reverse the ruling of the district court and reinstate the findings of the State Engineer.