PYRAMID LAKE PAIUTE TRIBE OF INDIANS, APPELLANT, *v.* HUGH RICCI, STATE ENGINEER, STATE OF NEVADA, DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES; NEVADA LAND AND RESOURCE COMPANY, LLC; AND THE CITY OF FERNLEY, RESPONDENTS.

No. 51603

December 16, 2010                           245 P.3d 1145

[Rehearing denied April 19, 2011]

*Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP*, and *Don Springmeyer* and *Christopher W. Mixson*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, and *Michael L. Wolz*, Senior Deputy Attorney General, Carson City, for Respondent Nevada State Engineer.

*Allison, MacKenzie, Pavlakis, Wright & Fagan, Ltd.*, and *Karen A. Peterson, Dawn Ellerbrock*, and *Jennifer Mahe*, Carson City, for Respondent Nevada Land & Resource Company.

*Taggart & Taggart, Ltd.*, and *Paul G. Taggart* and *Lynn V. Rivera*, Carson City, for Respondent City of Fernley.

Before PARRAGUIRRE, C.J., HARDESTY, DOUGLAS, CHERRY, SAITTA, GIBBONS and PICKERING, JJ.

## OPINION

*Per Curiam:*

In this appeal, we review the State Engineer's decision to grant Nevada Land and Resource Company, LLC's (NLRC), change application for its water rights in Washoe County's Dodge Flat Hydrologic Basin. In 1980, NLRC obtained permits to appropriate Dodge Flat groundwater for temporary use in a mining and milling project. That project failed to materialize, but NLRC kept its water rights valid and in good standing. Twenty years later, NLRC applied to change its use from temporary to permanent and from mining and milling to industrial power generating purposes.[1] The Pyramid Lake Paiute Tribe (the Tribe) opposed the application. After the State Engineer granted the application, the Tribe filed a petition for review in district court. The district court denied the petition, and the Tribe now appeals to this court.

The State Engineer is prohibited by law from granting a permit under a change application to appropriate public waters if: (1) there is no unappropriated water at the proposed source, (2) the "proposed use or change conflicts with existing rights or protectable interests in domestic wells" under NRS 533.024, or (3) the proposed use or change "threatens to prove detrimental to the public interest." NRS 533.370(5). The Tribe opposes the change application on all three grounds.

When the federal government establishes a reservation, it impliedly reserves sufficient water rights to fulfill the reservation's purpose. *See Winters v. United States*, 207 U.S. 564, 577 (1908). The Tribe relies on *Winters* to assert an implied right to the Dodge Flat groundwater, which it is currently using without a permit.

In 1944, the federal district court for the district of Nevada entered the *Orr Ditch* decree, which adjudicated water rights on the Truckee River. "Under the Decree, the Tribe owns Claims No. 1 and 2, the two most senior water rights on the Truckee River." *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1155 (9th Cir. 2010). In *Nevada v. United States*, 463 U.S. 110, 133 (1983), the United States Supreme Court ruled that the *Orr Ditch* decree represented "the full 'implied-reservation-of-water' rights that were

---

[1]NLRC originally applied to change its use in order to service a power plant to be constructed by Duke Energy North America. That project was subsequently canceled, and respondent City of Fernley negotiated with NLRC for use of the water. Thus, City of Fernley is involved in this dispute as a real party in interest to the water rights associated with NLRC's change application.

due the Pyramid Lake Indian Reservation." Thus, res judicata barred the Tribe from asserting additional federally implied water rights for the Pyramid Lake reservation. *Id.* at 145. Therefore, the Tribe cannot assert a federally implied water right to the Dodge Flat groundwater.

The Tribe conceded and the evidence did not establish that the change application affects its rights under the *Orr Ditch* decree. Rather, the Tribe argues that the State Engineer erred by granting the change application without taking into account the Tribe's current use of Dodge Flat groundwater. That use, however, is without the benefit of a permit or implied right. Because the Tribe's unauthorized use does not have priority over NLRC's permits and the proposed change, we affirm the State Engineer's ruling.[2]

## I.

The State Engineer's ruling concluded that Dodge Flat has a perennial yield of approximately 2,100 acre-feet annually (afa). The perennial yield of a hydrological basin is the equilibrium amount or maximum amount of water that can safely be used without depleting the source. The Dodge Flat perennial yield consists of approximately 1,400 acre-feet of recharge[3] from the Pah Rah Range and 700 acre-feet of inflow from groundwater beneath the Truckee River. The State Engineer based his conclusion regarding Dodge Flat's perennial yield on a United States geological survey and expert witness testimony.

The ruling further noted that permitted use of Dodge Flat groundwater already exceeds 5,115 afa, more than double the 2,100 afa perennial yield. However, the State Engineer determined that only 672 afa had been committed to permanent uses. The remaining permitted use was for temporary mining and milling purposes. Subtracting the 672 acre-feet of already-committed permanent use from the 2,100 afa perennial yield, the State Engineer concluded that 1,428 afa of groundwater was available to NLRC on a permanent basis. Accordingly, the State Engineer approved the application for use of 1,428 afa.

The Tribe filed a petition for judicial review in district court in Washoe County. The district court judge denied the petition, and

---

[2]Per the Tribe's request, we allowed supplemental briefing on the impact of the recent Ninth Circuit case, *United States v. Orr Water Ditch Co.*, 600 F.3d 1152 (9th Cir. 2010). Having considered the case and the parties' supplemental briefs, we conclude that the case does not impact our reasoning or decision.

[3]"Recharge" is defined as "[a]ddition of water, especially to a groundwater aquifer, to replace that which is withdrawn." 5 Robert E. Beck & Amy K. Kelley, *Waters and Water Rights*, at G-45 (3d ed. 2009).

the Tribe appeals to this court. On appeal, the Tribe protests NLRC's applications on three grounds. First, the Tribe argues that Dodge Flat Basin has no unappropriated water. Second, based on the hydrological connection between the Truckee River and Dodge Flat Basin, the Tribe argues that groundwater pumping would interfere with existing water rights to the Truckee River surface water. Third, the Tribe claims that pumping groundwater from Dodge Flat threatens to prove detrimental to the public interest because it reduces the Truckee River water quality and threatens the cui-ui fish and Lahontan cutthroat trout habitats.

## II.

The decision of the State Engineer is prima facie correct, and the burden of proof is on the party attacking the decision. NRS 533.450(9). "In reviewing an order of the State Engineer, we are bound by the same standard of review as the lower court. Under this standard, we are to determine whether the evidence upon which the engineer based his decision supports the order." *State Engineer v. Morris*, 107 Nev. 699, 701, 819 P.2d 203, 205 (1991) (citing *State Engineer v. Curtis Park*, 101 Nev. 30, 32, 692 P.2d 495, 497 (1985)). Thus, our review is limited to " 'a determination of whether substantial evidence in the record supports the State Engineer's decision.' " *Id.* (quoting *Revert v. Ray*, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979)). Substantial evidence is that which " ' "a reasonable mind might accept as adequate to support a conclusion." ' " *Bacher v. State Engineer*, 122 Nev. 1110, 1121, 146 P.3d 793, 800 (2006) (quoting *State Emp. Security v. Hilton Hotels*, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971))).

With respect to questions of law, however, the State Engineer's ruling is persuasive but not controlling. *Town of Eureka v. State Engineer*, 108 Nev. 163, 165-66, 826 P.2d 948, 949-50 (1992). Therefore, we review purely legal questions without deference to the State Engineer's ruling. *Id.*

## III.

The Department of the Interior created the Pyramid Lake Indian Reservation in 1859 by setting aside almost 500,000 acres of land for the Tribe. *Nevada v. United States*, 463 U.S. at 115. The reservation includes all of Pyramid Lake and a portion of the Truckee River, which serves as Pyramid Lake's sole source of water. *United States v. Alpine Land & Reservoir Co.*, 291 F.3d 1062, 1065 (9th Cir. 2002). Pyramid Lake is " ' "widely considered the

most beautiful desert lake in North America.' " *Nevada v. United States*, 463 U.S. at 114 (quoting Sessions S. Wheeler, *The Desert Lake: The Story of Nevada's Pyramid Lake* 90-91 (1967)).

In *Cappaert v. United States*, 426 U.S. 128, 138 (1976), the United States Supreme Court held that "when the Federal Government withdraws its land from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation." *See also Winters v. United States*, 207 U.S. 564, 577 (1908). These implied water rights vest at the time the federal government creates the reservation, *Arizona v. California*, 373 U.S. 546, 600 (1963), *abrogated on other grounds by California v. United States*, 438 U.S. 645 (1978), and are not lost through non-use. *See United States v. Orr Water Ditch Co.*, 309 F. Supp. 2d 1245, 1253 (D. Nev. 2004).

In 1913, the United States sued in federal district court to adjudicate the Truckee River water rights. *See Nevada v. United States*, 463 U.S. at 116. All Truckee River water users at the time were named as defendants in this suit. *Id.* In 1944, the United States District Court for the District of Nevada, pursuant to a settlement agreement, entered a final decree known as the *Orr Ditch* decree. *Id.* at 118. "Under the Decree, the Tribe owns Claims No. 1 and 2, the two most senior water rights on the Truckee River." *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1155 (9th Cir. 2010). In *Nevada v. United States*, the United States again sued, seeking additional rights to the Truckee River for the Tribe. Holding that res judicata barred the action, the United States Supreme Court ruled that "[the *Orr Ditch* decree] cannot be construed as anything less than a claim for the full 'implied-reservation-of-water' rights that were due the Pyramid Lake Indian Reservation." *Id.* at 133.

IV.

The Tribe currently pumps approximately 3,520 afa of groundwater from Dodge Flat Basin. This amount already exceeds the perennial yield before taking into account NLRC's applications. The Tribe uses this water for various purposes including irrigation, municipal, stock, domestic wells, and the tribal fish hatchery. Based on this current usage, the Tribe asserts that there is no unappropriated groundwater in the Dodge Flat Basin and that the change application will interfere with existing water rights and threaten to harm the public interest.

The *Orr Ditch* decree fully adjudicated the Tribe's implied water rights for the Pyramid Lake Indian Reservation. The Tribe therefore has no implied rights to the water it is currently pumping from Dodge Flat Basin. Because the Tribe lacks a permit for the water, it also does not have an express right to the water. Additionally, the Tribe's own expert testified that the change use application would not interfere with the Tribe's water rights under the *Orr Ditch* decree. The Tribe does not refute or disagree with that testimony. We accordingly conclude that none of the three NRS 533.370(5) reasons for denying a change application exist here.

First, because the Tribe does not have rights to the Dodge Flat groundwater, the State Engineer appropriately excluded the Tribe's unauthorized use to determine if the basin contained unappropriated water. Of the 2,100 afa perennial yield, 672 afa had already been committed to permanent, permitted use. The remaining 1,428 afa was unappropriated water available for permanent use.

Second, the State Engineer correctly concluded that the change applications will not affect existing water rights. Based on the Tribe's own evidence, the change application will not affect its senior water rights under the *Orr Ditch* decree. The Tribe nonetheless maintains that the pumping will affect other parties' Truckee River water rights because of the hydrological connection between Dodge Flat and the Truckee River. However, because the Tribe has no authorization to use the Dodge Flat groundwater, the Tribe's use does not have priority over NLRC's rights. Therefore, any effect on other parties' existing water rights is the result of the Tribe's unauthorized pumping in excess of the basin's perennial yield.

Third, the change use application does not threaten to prove detrimental to the public interest. NLRC is only permitted to pump water up to the amount of the unappropriated perennial yield. The State Engineer imposed this limitation in part to protect the Truckee River water quality and native fish habitats. Any potential threat to the public interest is therefore not the result of NLRC's proposed change. Rather, the potential threat is again the consequence of the Tribe's continued pumping Dodge Flat groundwater without a permit or implied right.

## V.

Substantial evidence supports the State Engineer's conclusion that Dodge Flat Basin contains unappropriated water and that any harm to existing water rights or the public's interest is the result of the Tribe's unpermitted use. We therefore affirm the State Engineer's ruling.