135 Nev., Advance Opinion 13

# IN THE SUPREME COURT OF THE STATE OF NEVADA

SIERRA PACIFIC INDUSTRIES,
Appellant,
vs.
TIM WILSON, P.E., IN HIS CAPACITY
AS NEVADA STATE ENGINEER;
DIVISION OF WATER RESOURCES,
DEPARTMENT OF CONSERVATION,
AN AGENCY OF THE STATE OF
NEVADA; AND IWS BASIN, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Respondents.

No. 73933



FILED

MAY 02 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a water rights matter. Second Judicial District Court, Washoe County; William A. Maddox, Senior Judge.

*Reversed and remanded with instructions.*

McDonald Carano LLP and Debbie Leonard, Reno,
for Appellant.

Aaron Ford, Attorney General, and Tori N. Sundheim, Deputy Attorney General, Carson City,
for Respondents Tim Wilson as State Engineer and Division of Water Resources, Department of Conservation.

Brownstein Hyatt Farber Schreck, LLP, and Bradley J. Herrema and Arthur A. Zorio, Reno,
for Respondent IWS Basin, LLC.

BEFORE GIBBONS, C.J., HARDESTY and PICKERING, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Intermountain Water Supply, Ltd.,[1] holds water rights permits to transmit water to Lemmon Valley for municipal use and was granted an extension of time by the State Engineer in which to apply the water to beneficial use. Appellant Sierra Pacific Industries argues that the extension impermissibly allowed Intermountain to speculate the water, as Intermountain had no intention to put the water to beneficial use itself but was instead seeking a third-party buyer of the permits to perfect the water appropriation. We consider whether Nevada's policy mandating beneficial use of water requires application of the anti-speculation doctrine to requests for extensions of time such that a permittee who is not planning to use the water must show evidence of its formal relationship with a third party who will be using the water in its place. Based on Nevada's ongoing requirement that a permittee show reasonable diligence to apply the water to beneficial use, we conclude that the anti-speculation doctrine applies to requests for extensions of time.

---

[1]Richard L. Elmore, as counsel for Intermountain, filed an answering brief and participated in oral argument before this court. After briefing and oral argument, Intermountain filed a motion informing this court that it transferred all of its rights, title, and interest in the water rights at issue to IWS Basin, LLC, and requesting that IWS be substituted as a respondent in place of Intermountain, which we granted. However, because Intermountain was the original permit holder and is referred to as such in the parties' briefs, we continue to refer to Intermountain as the respondent in this opinion.

Intermountain submitted an affidavit claiming the existence of an "[o]ption [a]greement" with two unidentified "worldwide engineering and construction firms" and an agreement that, as described, does not comport with the place of use specified in the permits, as evidence of its reasonable diligence to support its extension request. We adopt Colorado's ruling in *Front Range Resources, LLC v. Colorado Ground Water Commissioner*, 415 P.3d 807, 813 (Colo. 2018)—that a generic option contract does not save an applicant from the anti-speculation doctrine—and conclude that the State Engineer abused his discretion in determining, on this scant record, that Intermountain's averred option agreements satisfied the anti-speculation doctrine. Without the averred option agreements, the record does not contain sufficient detail to demonstrate reasonable diligence under NRS 533.380(3)-(4) and our decision in *Desert Irrigation, Ltd. v. State*, 113 Nev. 1049, 1057, 944 P.2d 835, 841 (1997). Accordingly, we reverse and remand so the State Engineer can reevaluate the extension in light of these authorities.

## FACTS AND PROCEDURAL HISTORY

In 2002, the State Engineer granted respondent Intermountain Water Supply, Ltd., three water rights permits in the Dry Valley Hydrographic Basin (the Basin). The three permits were for a transmission pipeline to deliver water to Lemmon Valley, Nevada, for municipal purposes. In its application for the first permit, Intermountain estimated that the project would be completed in five years and that the water would be put to beneficial use in ten years. Over time, the State Engineer granted Intermountain five additional permits, modifying the points of diversion in the original permits, but maintaining the same place of use: Lemmon Valley.

Intermountain has since applied for and received numerous extensions pursuant to NRS 533.380 to extend the time of construction and to put the water to beneficial use. In its first application for an extension of time (filed in 2005), Intermountain stated that it had delayed the project because of issues involving endangered species on the land. Intermountain sought subsequent extensions based on economic conditions. Since 2011, Intermountain has requested extensions because it was seeking a buyer for its water rights.

Appellant Sierra Pacific Industries (SPI) owns ranching and farming operations in the Basin and the surrounding area, and seeks cancellation of Intermountain's permits so that it can acquire the water rights to expand its irrigation and agricultural development. In 2015, anticipating another request for an extension by Intermountain, SPI pre-filed an objection to Intermountain's applications, arguing, among other things, that Intermountain did not have good cause to request an extension and Intermountain was engaging in water speculation. In 2016, Intermountain filed applications for extensions of time in which it again indicated that it was seeking a buyer for its rights. At the time of these applications, Intermountain had not yet constructed the pipeline or sold its water rights.

The State Engineer granted Intermountain's 2016 applications for extensions of time, concluding that Intermountain had demonstrated good faith and reasonable diligence in perfecting the appropriation. The State Engineer relied on a sworn affidavit by Robert Marshall, one of the Intermountain pipeline managers, who stated that Intermountain had entered into option contracts with an unidentified engineering firm and a separate, also unidentified construction firm, had negotiated a contract

with a public utility company to distribute water to its customers (but in Cold Springs, not Lemmon Valley), and was negotiating with home developers. Intermountain did not submit the alleged option agreements or Cold Springs utility contract, though it did submit an expense sheet and invoices, which Marshall outlined in the affidavit. Marshall attested to Intermountain having spent $3,000,000 over the life of the project and that it had incurred total expenses of $23,300.39 in the previous year "in moving the project forward" and responding "to the vexatio[us] litigation" from SPI's challenges to its permits' extensions. The State Engineer rejected SPI's claim that Intermountain was speculating the water, finding that Intermountain's sworn affidavit demonstrated that it had secured contractual agreements with firms, a public utility company, and developers, and the anti-speculation doctrine did not limit the alienability of water rights. SPI filed a petition for judicial review of the State Engineer's decision, which the district court denied. SPI now appeals that decision.

## DISCUSSION

This case presents the question of how the anti-speculation doctrine affects a water permittee who obtained water rights permits for beneficial use by a third party and who seeks an extension of time under NRS 533.380 to perfect those water rights. We must decide whether the anti-speculation doctrine applies to extension requests such that the permittee must have a formal relationship with the third party who will be putting the water to beneficial use and, if so, whether Intermountain provided sufficient evidence to show that it had such a relationship to merit an extension of its water permits.

Supreme Court
OF
Nevada

(O) 1947A

5

*Standard of review*

Whether the anti-speculation doctrine applies to extensions of time is a question of law that we review de novo. *Pyramid Lake Paiute Tribe of Indians v. Ricci*, 126 Nev. 521, 525, 245 P.3d 1145, 1148 (2010) (stating that this court "review[s] purely legal questions without deference to the State Engineer's ruling"). The State Engineer's ruling on a question of law is persuasive, but not entitled to deference. *Id.* We review the State Engineer's factual findings for an abuse of discretion and will only overturn those findings if they are not supported by substantial evidence. NRS 233B.135(3)(e), (f); *Bacher v. Office of the State Eng'r*, 122 Nev. 1110, 1121, 146 P.3d 793, 800 (Nev. 2006). "[S]ubstantial evidence [is] that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted); *see also* NRS 233B.135(4).

*Legal background and statutory requirements for an extension of time*

In Nevada, "[t]he water of all sources of water supply within the boundaries of the State . . . belongs to the public." NRS 533.025. "[E]ven those holding certificated, vested, or perfected water rights do not own or acquire title to water. They merely enjoy the right to beneficial use." *Desert Irrigation*, 113 Nev. at 1059, 944 P.2d at 842. We have explained that "[t]he concept of beneficial use is singularly the most important public policy underlying the water laws of Nevada and many of the western states." *Id.* Accordingly, pursuant to NRS 533.395(1), the holder of a permit to appropriate water must proceed "in good faith and with reasonable diligence to perfect the appropriation" or face cancellation of the permit by the State Engineer. *Id.*

If the permittee is unable to complete construction of the work or put the water to beneficial use within the specified time, the permittee may request an extension of time pursuant to NRS 533.380(3). Upon "good

Supreme Court
OF
Nevada

(O) 1947A

6

cause shown," the State Engineer may "grant any number of extensions of time" to allow the permittee to complete construction work or apply the water to beneficial use. NRS 533.380(3). To obtain an extension, the permittee must submit "proof and evidence [that shows he or she] is proceeding in good faith and with reasonable diligence to perfect the application." NRS 533.380(3)(b) (2013); 2013 Nev. Stat., ch. 147, § 2.4, at 502.[2] "[T]he measure of reasonable diligence is the steady application of effort to perfect the application in a reasonably expedient and efficient manner under all the facts and circumstances." NRS 533.380(6). In addition, when the permit provides water rights for municipal use, as is the case here, the State Engineer must consider additional factors set forth in NRS 533.380(4) before granting the application for an extension of time. A permit holder's failure to present this evidence "is prima facie evidence that the [permit] holder is not proceeding in good faith and with reasonable diligence." NRS 533.380(3).

*Background on the anti-speculation doctrine*

The anti-speculation doctrine "precludes speculative water right acquisitions without a showing of beneficial use." *Bacher*, 122 Nev. at 1119, 146 P.3d at 799. In *Bacher*, we addressed the situation where a permittee applicant applies for a permit for an interbasin water transfer under NRS 533.370 but does not intend to put the appropriated water to beneficial use itself. *Id.* We explained that a permittee is statutorily required to show that the water will be put to beneficial use and must justify "the need to import the water from another basin." NRS 533.370(6). We

---

[2]All references are to the 2013 statutes, unless stated otherwise, as those were in effect at the time the complaint was filed and at the time the State Engineer granted the permits at issue.

also explained that the permittee could satisfy these requirements by demonstrating a third party's need and intent to put the water to beneficial use in its place. *Bacher*, 122 Nev. at 1116-19, 146 P.3d at 797-99. However, to ensure that the permittee is not merely speculating on water, we adopted Colorado's requirement that the permittee show "an agency or contractual relationship with the party intending to put the water to beneficial use" and specify the intended beneficial use of the appropriation. *Id.* at 1119-20, 146 P.3d at 799 (citing *Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n*, 758 P.2d 164, 173 n.11 (Colo. 1988)). Where "the purported appropriator does not intend to put water to use for its own benefit and has no contractual or agency relationship with one who does," the appropriator cannot demonstrate beneficial use and is therefore barred by the anti-speculation doctrine from maintaining the water permits. *Id.* at 1119, 146 P.3d at 799 (internal quotation marks omitted). In this manner, the anti-speculation doctrine limits "an entity's ability to demonstrate beneficial use when it [does] not have definite plans to put water to beneficial use or a contractual relationship with an entity that ha[s] such plans." *Adaven Mgmt., Inc. v. Mountain Falls Acquisition Corp.*, 124 Nev. 770, 777, 191 P.3d 1189, 1194 (2008).

Though *Bacher* involved an original application for a permit under NRS 533.370, whereas this matter involves an application for an extension of time on an existing permit under NRS 533.380, the same policies for applying the anti-speculation doctrine to an original application for a permit are also present in an application for an extension of time. Both applications require the applicant to show efforts to "apply the water to the intended beneficial use with reasonable diligence." *Bacher*, 122 Nev. at 1119-20, 146 P.3d at 799; *compare* NRS 533.370, *with* NRS 533.380. As we

explained in *Bacher*, an applicant who only speculates on the use of water cannot satisfy "the beneficial use requirement that is so fundamental to our State's water law jurisprudence." 122 Nev. at 1119, 146 P.3d at 799. Thus, the concerns underlying the anti-speculation doctrine are not limited to the original permit application process; rather, a permittee has an ongoing duty to put the water to beneficial use with reasonable diligence throughout the water permitting process. *See* NRS 533.380(3); NRS 533.395(1). And it is clear from the language of NRS 533.380(3) as well as its legislative history that the requirement that permittees show reasonable diligence in appropriating water rights for permit extensions is to protect against speculation. *See* Hearing on A.B. 624 Before the Assembly Government Affairs Comm., 67th Leg. (Nev., May 27, 1993); *id.*, Exhibit C.

As such, we conclude that the formal-relationship requirement adopted in *Bacher* also applies when a permittee requests an extension of time under NRS 533.380. Thus, when a permittee's rights are based on water appropriation by a third party, the permittee must show a formal relationship with the third party in order to satisfy NRS 533.380's ongoing requirement that the permittee demonstrate reasonable diligence to apply the water to beneficial use. *See Bacher*, 122 Nev. at 1120, 146 P.3d at 799. And because NRS 533.380(3) specifically requires a permittee to provide evidence of its efforts to put the water to beneficial use with each request for an extension of time, we conclude that the anti-speculation doctrine applies to each extension request. In applying for an extension of time, the permittee must submit proof and evidence of the third-party relationship. *Desert Irrigation*, 113 Nev. at 1057, 944 P.2d at 841 (stating that "[a] mere statement of intent to put water to beneficial use, uncorroborated with any actual evidence, after nearly twenty years of nonuse is insufficient to justify

a sixteenth . . . extension"). Thus, under NRS 533.380(3)(b), Intermountain was required to present evidence of these contracts and negotiations in the present extension request.

*The anti-speculation doctrine requires that a permittee show actual evidence of its formal relationship with a third party who will perfect the water right*

With this framework in mind, we now consider whether the State Engineer properly applied the anti-speculation doctrine in this case. The State Engineer concluded that the formal-relationship requirement we adopted in *Bacher* did not apply to Intermountain's initial permit request because the requirement was not in place when the State Engineer issued the initial permits (between 2002 and 2006). For the instant extension request, the State Engineer seemed to conclude that the anti-speculation doctrine applied and that Intermountain's affidavit attesting that it had "entered into an [o]ption [a]greement with two world-wide engineering and construction firms, experienced in water systems development" was sufficient evidence of Intermountain's reasonable diligence to perfect the water rights. We are not convinced that the State Engineer properly applied the anti-speculation doctrine to the option agreements. The Colorado Supreme Court's opinion in *Front Range*, 415 P.3d at 813, is instructive on this point. The *Front Range* court held that an option contract, while specifically naming an end-user, was too abstract to overcome the anti-speculation doctrine because the end-user could elect to purchase the water rights in full, in part, or not at all, which made the option contract too speculative. *See id.* We agree and adopt the reasoning of the *Front Range* court.

Intermountain did not provide substantial evidence of its option agreements with third parties to allay the concerns over its speculative use. The affidavit did not identify the firms it had "entered into an [o]ption

SUPREME COURT
OF
NEVADA

(O) 1947A

10

[a]greement with," other than by stating that one was in Chicago, Illinois, and the other in Tel Aviv, Israel. It also did not state how these agreements related to the Intermountain pipeline project, and there is no evidence that Intermountain obtained an end-user. It is not possible to ascertain a formal contractual relationship from the mere mention in an affidavit of an option contract, especially when the third parties are unidentified and there is no description of how the third parties will perfect the appropriation. *See id.* The State Engineer's evident conclusion that Intermountain was not violating the anti-speculation doctrine because its principal claimed in an affidavit that Intermountain had entered into unproduced option agreements was an error under *Front Range*, because a generic option contract, without more, does not avoid the anti-speculation doctrine. *See Bacher*, 122 Nev. at 1120, 146 P.3d at 799 (requiring an agency or contractual relationship with the party committed to put the water to beneficial use); *see also Front Range*, 415 P.3d at 813 (holding that a generic option agreement was too speculative to overcome the anti-speculation doctrine); *Desert Irrigation*, 113 Nev. at 1057, 944 P.2d at 841 (requiring "actual evidence" of reasonable diligence to approve an extension request).

*The remainder of Intermountain's affidavit attesting to uncorroborated negotiations with third parties and a contract with a utility to use the water in Cold Springs does not allow us to affirm*

Additionally, Intermountain attested that "[a]n agreement ha[d] been reached," which it was in the process of signing, with Utilities, Inc., "[a] utility company[,] to distribute Intermountain's water to its present and future customers in the Cold Springs area of Washoe County." Intermountain also stated that it "had numerous meetings" with developers of a construction project for 10,000 homes in Reno and that it expected to have "agreements in hand within three to four months." These allegations,

without more, do not allow us to affirm the State Engineer's decision to grant Intermountain's extension request. Reference to negotiations with unspecified developers does not show concrete evidence of progress towards beneficial use or identify how the third parties would place the water to beneficial use in Intermountain's project area, which the permits designate as Lemmon Valley. This is particularly concerning because, in the order granting the extensions, it appears that the State Engineer impliedly allowed Intermountain to develop its project in areas beyond the designated area in the permits. We have reviewed all of the permit applications and the permits call for a place of use specifically in Lemmon Valley. We also reviewed the State Engineer's 2015 extension, which unambiguously indicates that "[t]he area to be served is Lemmon Valley."

Accordingly, we reverse and remand to the district court with instructions to remand to the State Engineer to determine whether the uncorroborated third-party agreements existed and to allow Intermountain to submit evidence of the agreements in support of its request.[3] On remand

---

[3]Given our disposition, we do not reach the issue of whether the rest of the State Engineer's order was supported by substantial evidence. We also decline to reach Intermountain's law-of-the-case, issue-preclusion, and waiver arguments in the first instance. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that this court need not address issues that are not cogently argued and supported by relevant authority).

to the State Engineer, he must also more fully explain his basis for granting extensions for use in Cold Springs rather than in Lemmon Valley, as specified in the permits.

                                                _____, J.
                                                Hardesty

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A