142 Nev., Advance Opinion 18

IN THE SUPREME COURT OF THE STATE OF NEVADA

EGGER ENTERPRISES, LLC, A
DOMESTIC LIMITED LIABILITY
COMPANY,
Appellant,
vs.
STATE ENGINEER OF THE STATE OF
NEVADA, OFFICE OF THE STATE
ENGINEER, DIVISION OF WATER
RESOURCES, DEPARTMENT OF
CONSERVATION AND NATURAL
RESOURCES,
Respondent.

No. 89291



FILED

FEB 26 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review of a State Engineer decision declaring the forfeiture of water rights. Sixth Judicial District Court, Humboldt County; Michael Montero, Judge.

*Affirmed.*

Schroeder Law Offices, P.C., and Laura A. Schroeder, Therese A. Ure Stix, and Caitlin R. Skulan, Reno,
for Appellant.

Aaron D. Ford, Attorney General, and J. Gregory Cloward, Deputy Attorney General, Carson City,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

26-09023

## OPINION

By the Court, LEE, J.:

NRS 534.090(1) provides that a water rights holder who does not put the water to beneficial use for five successive years risks forfeiture of those water rights. While a water rights holder may request extensions to that deadline, whether to grant the requested extension is within the State Engineer's discretion, as guided by the considerations specified in NRS 534.090(3).

Here, after receiving a notice of nonuse and intent to forfeit from the State Engineer, appellant Egger Enterprises, LLC, obtained a one-year extension under NRS 534.090(3). Upon its request for a second extension, however, the State Engineer determined that another extension was not warranted and declared some of Egger's water rights forfeited. Egger challenged the decision by filing a petition for judicial review in district court, which was denied. Now before us, Egger argues that the State Engineer's decision requires reversal because he considered only seven of nine factors enumerated in NRS 534.090(3). We conclude that NRS 534.090(3) does not mandate that the State Engineer make findings as to factors that are not relevant to the request for extension. Moreover, the State Engineer did not abuse his discretion in determining that, as guided by the remaining factors, good cause did not warrant the extension. We further conclude that equitable relief is not available to Egger as a matter of law. Therefore, we affirm.

### FACTS AND PROCEDURAL HISTORY

In 1999, Egger purchased High Desert Ranch, consisting of farmland located in the Pine Forest Valley hydrographic basin in Humboldt County, Nevada. In 1997, the ranch's prior owner had begun converting the



ranch's flood and hand-line irrigation systems to center pivot irrigation systems,[1] a conversion that Egger later completed in 2016. The circular configuration of the new pivot irrigation system resulted in the corners of the fields no longer being irrigated, so Egger sought new uses for the leftover water. To that end, Egger began filing Desert Land Entry (DLE) applications with the Bureau of Land Management (BLM) to add additional land to the ranch from adjacent public lands, with the goal of eventually using the leftover water on this land.

However, the DLE application process was protracted due to administrative conflicts between the BLM and the Nevada Division of Water Resources (NDWR). In 2014, the BLM notified Egger that its DLE applications were being placed on hold while Egger obtained water use permits from NDWR. Egger then filed the appropriate water use applications with NDWR requesting to move water onto the DLE land by changing the point of diversion and place of use of the unused water (the change applications). Over a year later, the NDWR wrote to the BLM regarding the change applications and expressed concern that the BLM was deviating from historical practice when it put Egger's applications on hold while Egger obtained NDWR water rights permits. In 2016, the BLM agreed to return to its established practice and permitted Egger to resume the DLE application process.

A nonparty challenged the change applications, arguing that they should be denied because Egger had not used the water subject to the

---

[1]"As the term implies, a center pivot operates from a single stationary point situated in the center of a field or designated area." Mike Price & Ed Butts, *Irrigation Fundamentals: Part 7, Sprinkler Systems, Center Pivots, and Linears*, Water Well Journal (Oct. 22, 2019), https://waterwelljournal.com/irrigation-fundamentals-8.

change applications in over 16 years, and thus the water rights were forfeited.[2] In fact, Egger had not used portions of its water rights for 27 years—since the time the previous owner began the conversion to pivot irrigation. After briefing and a hearing before the State Engineer, the State Engineer issued Ruling 6396, in which he found by clear and convincing evidence that the water previously used in the corners of the fields had not been put to use for five or more consecutive years and declared those unused portions of Egger's water rights forfeited. In response, Egger filed a petition for judicial review challenging the ruling on various grounds. The district court only reached the issue of notice, finding that the State Engineer failed to provide proper notice under NRS 534.090(2)(a) and thus reversed and remanded Ruling 6396.

On remand, the State Engineer sent the required notice of nonuse and intent to forfeit to Egger. Rather than challenge the finding of nonuse, Egger filed requests for an extension of time to prevent forfeiture. In the extension requests, Egger acknowledged that portions of its water rights were unused but failed to affirmatively indicate when the water would be put to beneficial use. The State Engineer nonetheless granted Egger's requests for an extension, warning Egger that no further extensions would be granted unless good cause was shown. *See* NRS 534.090(3). A year later, Egger filed another round of extension requests. The State Engineer denied Egger's extension requests and issued a declaration of forfeiture of the unused portion of Egger's water rights. In his decision, the

---

[2]The nonparty challenged Egger's application pursuant to NRS 533.365, which permits individuals to file a protest against an application to change the place of diversion or manner or place of use with the Office of the State Engineer.

State Engineer made findings as to seven of the nine factors listed in NRS 534.090(3), making no findings as to NRS 534.090(3)(c) and NRS 534.090(3)(g).

In response, Egger filed a petition for judicial review challenging the State Engineer's declaration of forfeiture and seeking equitable relief. The district court denied Egger's petition for judicial review, concluding that the State Engineer's decision was supported by substantial evidence and that equitable relief was unavailable to Egger as a matter of law. This appeal followed.

## DISCUSSION

By statute, Nevada's water belongs to the public. *See* NRS 533.025. Those wishing to utilize it must therefore show that they are putting the water to beneficial use or else risk having their rights forfeited. *Desert Irrigation, Ltd. v. State*, 113 Nev. 1049, 1059, 944 P.2d 835, 842 (1997) ("The concept of beneficial use is singularly the most important public policy underlying the water laws of Nevada and many of the western states."); *see also* NRS 533.030 (providing that "all water may be appropriated for beneficial use" subject to existing rights and other limitations provided in the water statutory scheme). "[F]ailure for 5 successive years . . . to use beneficially all or any part of the underground water for the purpose for which the right is acquired or claimed, works a forfeiture" of that right. NRS 534.090(1). If the State Engineer's records show that the water rights holder has failed to put the water to beneficial use for four or more consecutive years, the State Engineer must then notify the rights holder that they have one year from the date of notice to put the water to beneficial use or risk forfeiture. NRS 534.090(2). To prevent a forfeiture, the water rights holder may request a one-year extension of time to show that the water has been put to beneficial use. NRS 534.090(3). The

State Engineer may grant an extension "upon request and for good cause shown." *Id.* NRS 534.090(3) lists nine factors that the State Engineer "shall, among other reasons, consider" in determining whether to grant or deny a request for an extension.

"[T]his court's review of a State Engineer's decision is limited." *Bacher v. Off. of State Eng'r of State of Nev.*, 122 Nev. 1110, 1121-22, 146 P.3d 793, 800 (2006). We will not substitute our judgment for the State Engineer's judgment, nor will we reweigh the evidence. *Id.* at 1122, 146 P.3d at 800. Rather, we are limited to determining "whether substantial evidence in the record supports the State Engineer's decision." *Pyramid Lake Paiute Tribe of Indians v. Ricci*, 126 Nev. 521, 525, 245 P.3d 1145, 1148 (2010) (internal quotation marks omitted). Substantial evidence is evidence "a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "Questions of law, such as whether the State Engineer applied the correct legal standard, are reviewed de novo." *Pyramid Lake Paiute Tribe*, 126 Nev. at 525, 245 P.3d at 1148.

Egger's primary contention is that the State Engineer improperly applied NRS 534.090(3) because his decision failed to account for all nine considerations enumerated in the statute. Egger further contends that the State Engineer's decision was not supported by substantial evidence and that Egger is entitled to equitable relief. Based on the text of the statute, we conclude that the State Engineer properly applied NRS 534.090(3), that the decision is supported by substantial evidence, and that equitable relief is not available.

*The State Engineer was not required to make findings on all nine considerations enumerated in NRS 534.090(3) before denying the request for an extension*

NRS 534.090(3) states, in relevant part, that

[t]he State Engineer may, upon the request of the holder of any right described in subsection 1, extend the time necessary to work a forfeiture under subsection 2 if the request is made before expiration of the time necessary to work a forfeiture. Except as otherwise provided in subsection 4, the State Engineer may grant, upon request and for good cause shown, any number of extensions, but a single extension must not exceed 1 year. In determining whether to grant or deny a request, the State Engineer *shall*, among other reasons, consider [nine enumerated factors].

(Emphasis added.) While the State Engineer must consider each enumerated factor, nothing in the statute requires him to make findings on irrelevant or inapplicable factors. *See Mountain Falls Acquisition Corp. v. State*, No. 74130, 2019 WL 2305720, at *2 (Nev. May 29, 2019) (Order of Affirmance) ("NRS 534.090 neither requires the State Engineer to grant an extension nor to weigh all the NRS 534.090(2)[3] factors in every case."). Indeed, not all NRS 534.090(3) considerations are relevant to every request. Here, the State Engineer did not make findings as to factor (c), "[a]ny economic conditions or natural disasters which made the holder unable to put the water to that use," and factor (g), "[t]he date of priority of the water right as it relates to the potential curtailment of water use in the basin." Egger did not specifically allege that its nonuse was due to economic conditions or natural disasters, nor did it allege that there had been or was

---

[3]This subsection has been renumbered to NRS 534.090(3).

likely to be curtailment.[4] Where the factors are not relevant to an applicant's showing of good cause for an extension, the State Engineer need not make findings as to those factors. *See Mountain Falls*, 2019 WL 2305720, at *2.

*The State Engineer's decision was supported by substantial evidence*

*The State Engineer's finding as to NRS 534.090(3)(a) is supported by substantial evidence*

While no single NRS 534.090(3) consideration is determinative, we address each relevant factor in turn. The first factor for the State Engineer to consider is "whether the holder has submitted proof and evidence that the holder is proceeding in good faith and with reasonable diligence to resume use of the water beneficially for the purpose for which the holder's right is acquired or claimed." NRS 534.090(3)(a). We have previously held that a water rights holder does not show good faith and reasonable diligence regarding the use of water where the water rights holder plans to hold on to excess water rights while attempting to secure new uses. *See Desert Irrigation, Ltd. v. State*, 113 Nev. 1049, 1057-58, 944 P.2d 835, 841 (1997); *see also Sierra Pac. Indus. v. Wilson*, 135 Nev. 105, 110, 440 P.3d 37, 41 (2019) (holding that the anti-speculation doctrine, which prevents water right holders from retaining their water rights

---

[4]Although Egger argues on appeal that progress on its change applications was delayed due to Department of Interior Order 3395 during the COVID-19 pandemic, we do not consider this here as Egger made no mention of the impacts of the pandemic in its 2019 or 2020 extension requests. *See Off. of the State Eng'r v. Morris*, 107 Nev. 699, 701, 819 P.2d 203, 205 (1991) (stating that, in reviewing findings of the State Engineer, this court is limited to "a determination of whether substantial evidence *in the record* supports the State Engineer's decision" (emphasis added)).

without a showing of beneficial use, applies to requests for extensions of time).

Here, while the State Engineer acknowledged that Egger has spent the past ten years attempting to acquire land on which it can use the excess water, Egger is not entitled to retain excess water rights while it waits to secure new uses. *See id.* Because Egger did not yet own the land to which it sought to redirect its unused water, we conclude that the State Engineer's finding that Egger did not exercise reasonable diligence is supported by substantial evidence.

*The State Engineer's finding as to NRS 534.090(3)(b) is supported by substantial evidence*

The second factor takes into consideration "[t]he number of years during which the water has not been put to the beneficial use for which the right is acquired or claimed." NRS 534.090(3)(b). NRS 534.090(1) provides that failure to use a water right beneficially for five successive years will result in a forfeiture of those rights.

Here, the State Engineer determined that portions of Egger's water had not been put to use in more than five years and that Egger had no immediate plans to do so. Specifically, the State Engineer based this determination on evidence showing that the corners of the sections with irrigation pivots had not been irrigated since 1997. While Egger contests this conclusion on the basis that the water under those sections *could* be used elsewhere, Egger's 2019 and 2020 requests for extensions of time conceded that a portion of its water was not being used. An Egger representative also testified at a 2017 hearing that he applied for additional land in order to use that water. Moreover, the State Engineer's report suggests that the unirrigated corners of the center pivot irrigation areas can be directly linked to nonuse of the specified water because these rights have

Supreme Court
OF
Nevada

(O) 1947A

9

"well defined places of use." As this report is a summary of scientific findings, as opposed to findings of fact, we defer to this conclusion. *See Wilson v. Pahrump Fair Water, LLC*, 137 Nev. 10, 16, 481 P.3d 853, 858 (2021) ("[W]hen examining this kind of scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential because such conclusions are within [the agency's] area of special expertise . . . ." (second alteration in original) (internal quotation marks omitted)). Thus, as to this consideration, the State Engineer's conclusion that the forfeited water had not been used in excess of five years was supported by substantial evidence.

*The State Engineer's findings as to NRS 534.090(3)(d) and (f) are supported by substantial evidence*

NRS 534.090(3)(d) and (f) prompt the State Engineer to consider whether the water right is located in a basin within a county under a declaration of drought or in a basin that has been designated as a critical management area under NRS 534.110(7). The State Engineer analyzed these factors together and determined that Egger's nonuse of water was not intended to conserve water because Egger indicated that it plans to put the water to beneficial use in farming. While the State Engineer also noted that Nevada was in extreme to moderate drought during the relevant period, from 2012 to 2020, this is not determinative. Although these considerations are primarily intended to provide the State Engineer with the ability to suspend forfeitures of water rights during times of drought, *see* Hearing on A.B. 209 Before the Assemb. Comm. on Nat. Res., Agric., and Mining, 79th Leg. (Nev., March 14, 2017), at 10, Egger failed to discuss in its requests how such drought conditions contributed to its decades-long nonuse of the water. Further, nothing in Egger's requests suggested that the Pine Forest Valley basin has been classified as a critical management area under

SUPREME COURT
OF
NEVADA

(O) 1947A

subsection 7 of NRS 534.110. Accordingly, the State Engineer's finding was supported by substantial evidence.

*The State Engineer's decision as to NRS 534.090(3)(e) is supported by substantial evidence*

NRS 534.090(3)(e) looks to demonstrated efforts to conserve water that resulted in a reduction in water consumption. In his decision, the State Engineer determined that this factor was not a relevant consideration because the evidence showed that, although a previous wheel line irrigation system had been switched to a more water-efficient pivot irrigation system, even some areas equipped with pivot irrigation were not actually being irrigated. Therefore, the decrease in water use was not due to an effort to conserve, but due to complete nonuse. Further, nowhere does Egger allege that it installed pivot irrigation systems in an effort to conserve water. Moreover, if Egger were permitted to keep its water rights, the record suggests that it would not conserve the water but would eventually use it all on adjacent land. The State Engineer's conclusion as to this consideration is supported by substantial evidence.

*The State Engineer's finding as to NRS 534.090(3)(h) is supported by substantial evidence*

In accordance with NRS 534.090(3)(h), the State Engineer considered the availability of water in the basin. In his decision, the State Engineer found that the withdrawals of groundwater from the Pine Forest Valley basin consistently exceed the perennial yield and that there is no unappropriated water within the basin. Egger conceded this fact in its petition for judicial review, and we therefore decline further analysis of this factor.

*The State Engineer's reasoning as to NRS 534.090(3)(i) does not tip the balance in Egger's favor*

The final consideration, NRS 534.090(3)(i), prompts the State Engineer to consider any orders restricting use or appropriation of water in the basin. In his decision, the State Engineer identified two orders that were relevant to this consideration: (1) State Engineer's Order 831 implemented in 1983, which established irrigation as a nonpreferred use and denied applications for new appropriations of groundwater for irrigation purposes, and (2) State Engineer's Order 1290, implemented in 2017, which further limited new appropriations to temporary and environmental purposes. Given these orders, Egger will likely have no ability to apply for new water rights moving forward should the DLE applications be granted. Thus, we conclude that this factor may weigh in favor of Egger. But because no single factor is outcome determinative, we are not convinced that this tips the balance so far in Egger's favor as to warrant reversal.

*Egger is not entitled to equitable relief*

This court reviews a district court's decision granting or denying equitable relief for abuse of discretion. *Wilson v. Happy Creek, Inc.*, 135 Nev. 301, 310, 448 P.3d 1106, 1113 (2019). However, as this determination presents a mixed question of law and fact, "deference is not owed to legal error, [s]o, to the extent the question is whether the facts as found allow equitable relief, de novo review applies." *Id.* at 310-11, 448 P.3d at 1113-14 (citation omitted).

Nevada courts have the authority to grant equitable relief in water law cases beyond the relief prescribed by statute "when warranted." *See, e.g., id.* at 305, 448 P.3d at 1110 (citing cases recognizing the courts' power to grant equitable relief in water law cases). Equitable relief,

however, is not available where the water was not put to beneficial use, absent estoppel due to an error by the State Engineer. *Id.* at 311, 448 P.3d at 1114. Further, equitable relief is allowed only when such relief improves (1) efficiency, (2) sustainability, (3) fairness, and (4) clarity. *Id.*

Efficiency is a central concern in Nevada and "fundamental to [Nevada's] water law jurisprudence." *Id.* (alteration in original) (internal quotation marks omitted). Thus, the court may grant equitable relief where such relief promotes water use that is "more beneficial, unwasteful, and efficient." *Id.* Relatedly, when looking to sustainability, courts consider that water is a scarce resource, and thus, equitable relief should "craft a remedy that recognizes the interests of future generations." *Id.* Fairness recognizes that Nevada's water is a public good, and therefore, a remedy "must better effect justice than what the statute at issue requires." *Id.* at 312, 448 P.3d at 1115. Finally, an equitable remedy is appropriate if the remedy promotes greater clarity in water law. *Id.* at 313-14, 448 P.3d at 1116. Clarity may be promoted where a statute designed to improve efficiency is instead used as a penalty that could ultimately disincentivize forward-looking efforts to improve water use. *Id.*

Egger asks this court to use its equitable powers to reinstate its water rights. But substantial evidence demonstrates that Egger has not made beneficial use of its forfeited water rights for at least 10, and likely closer to 27, years. Further, Egger's ultimate goal was not to conserve water, but to expand its operation while maintaining its same rights. Moreover, there is nothing in the record to support a finding of estoppel. Finally, the State Engineer had the authority to grant Egger's extension request if good cause was shown. *Cf. Happy Creek*, 135 Nev. at 305, 448 P.3d at 1110 (granting equitable relief where the State Engineer was

SUPREME COURT
OF
NEVADA

(O) 1947A

13

without statutory authority to act). Accordingly, we conclude that equitable relief is inappropriate under these circumstances.

## CONCLUSION

We conclude that the State Engineer properly applied NRS 534.090(3) by evaluating and weighing considerations applicable to Egger's extension requests. Accordingly, the State Engineer's forfeiture of Egger's water rights was supported by substantial evidence. As Egger has failed to put its water to beneficial use within the statutorily prescribed time period and extension thereof and is further not entitled to equitable relief, we affirm the decision of the district court.

_____, J.
Lee

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Pickering

_____, J.
Bell

_____, J.
Cadish