GREAT BASIN WATER NETWORK, a Nonprofit Organization; DEFENDERS OF WILDLIFE, a Nonprofit Corporation; EDGAR ALDER; CLARK W. MILES; RAYMOND E. TIMM; THEODORE STAZESKI; SHELDON M. EDWARDS; KATHRYN HILL; KENNETH F. HILL; SCOTTY HEER; BETH B. ANDERSON; SUSAN L. GEARY; DONALD W. GEARY; ROBERT EWING; PAMELA JENSEN; BRUCE JENSEN; RENEE A. ALDER; ROBERT J. NICKERSON; JOYCE B. NICKERSON; EDWARD J. WEISBROT; ALEXANDER ROSE, Executive Director of the Long Now Foundation; ROBERT N. KRANOVICH; PAMELA M. PEDRINI; RICK HAVENSTRITE; TERRENCE P. MARASCO; BRYAN HAMILTON; JOHN B. WOODYARD, II; LAURIE E. CRUIKSHANK; DONALD FOSS; SELENA L. WEAVER; MARY E. COLLINS; CANDI A. ASHBY; SALLY L. GUST; BRUCE ASHBY; DANIEL MAES; ROBERT N. MARCUM; TARA FOSTER; DONALD A. DUFF; ELISABETH A. DOUGLASS; JAMIE DENERIS; NOMI MARTIN-SHEPPARD; VERONICA F. DOUGLASS; ABIGAIL C. JOHNSON; MARIE JORDAN; JAMES JORDAN; RUTHERFORD DAY; THE GREAT BASIN CHAPTER OF TROUT UNLIMITED; WILDA GARBER; THE UTAH COUNCIL OF TROUT UNLIMITED; PANDORA WILSON; PARKER DAMON; CAROL DAMON; ANNA HECKETHORN; and DEBORAH TORVINEN, Appellants, v. TRACY TAYLOR, in His Official Capacity as the NEVADA STATE ENGINEER; THE STATE OF NEVADA DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, DIVISION OF WATER RESOURCES; and THE SOUTHERN NEVADA WATER AUTHORITY, Respondents.

No. 49718

June 17, 2010

234 P.3d 912

*Leah R. Wigren*, Reno; *Simeon Herskovits*, Taos, New Mexico; *Matthew K. Bishop*, Helena, Montana; *Brian Segee*, Washington, D.C., for Appellants.

*Catherine Cortez Masto*, Attorney General, and *Bryan L. Stockton*, Deputy Attorney General, Carson City, for Respondents State Engineer and Division of Water Resources.

*Taggart & Taggart, Ltd.*, and *Paul G. Taggart* and *Joseph C. Reynolds*, Carson City; *Dana R. Smith*, Las Vegas; *Lewis and Roca LLP* and *Daniel F. Polsenberg* and *Joel D. Henriod*, Las Vegas; *Holland & Hart, LLP*, and *J. Stephen Peek*, Las Vegas, for Respondent Southern Nevada Water Authority.

## OPINION

By the Court, HARDESTY, J.:

On January 28, 2010, this court issued an opinion in this appeal reversing the district court's denial of appellants' petition for judicial review. Thereafter, respondents Southern Nevada Water Authority (SNWA) and the State Engineer (collectively, respondents) filed petitions for rehearing pursuant to NRAP 40. We will consider rehearing when we have overlooked or misapprehended material facts or questions of law or when we have overlooked, misapplied, or failed to consider legal authority directly controlling a dispositive issue in the appeal. NRAP 40(c)(2). Having reviewed the briefing associated with respondents' petitions for rehearing, we conclude that rehearing is warranted, in part. We grant, in part, the State Engineer's petition for rehearing with respect to the State Engineer's request that we clarify that this opinion applies to protested applications. Additionally, we grant, in part, SNWA's pe-

tition for rehearing with respect to SNWA's request that we undertake the determination of the proper remedy in this case. We withdraw our January 28, 2010, opinion and issue this opinion in its place.

In this appeal, we must determine two narrow, yet fundamental questions: whether the State Engineer violated his statutory duty under NRS 533.370(2) by failing to rule on SNWA's 1989 water appropriation applications within one year and, if so, what is the proper remedy for his violation of his statutory duty. NRS 533.370(2), as it existed in 1989, required the State Engineer to approve or reject each water appropriation application within one year after the final protest date. The State Engineer, however, could postpone taking action beyond one year if he obtained written authorization from the applicant and protestants or if there was an ongoing water supply study or court action. None of those conditions occurred by the end of 1991. However, in 2003, the Legislature amended NRS 533.370 to permit the State Engineer to postpone action on pending applications made for a municipal use. The district court summarily determined, among other issues, that the amendment applied to SNWA's 1989 applications, thus enabling the State Engineer to take action on applications filed 14 years earlier.

The parties to this appeal dispute whether SNWA's 1989 applications were "pending" in 2003 under the legislative amendment and, therefore, whether the amendment applied retroactively to those applications. We conclude that "pending" applications are those that were filed within one year prior to the enactment of the 2003 amendment. And, in the absence of statutory language and legislative history demonstrating an intent that the amendment apply retroactively to SNWA's 1989 applications, we determine that the State Engineer could not take action on the protested applications under the 2003 amendment to NRS 533.370.

Because we determine that the 1989 water appropriation applications were not pending in 2003, we conclude that the State Engineer violated his statutory duty by failing to take action within one year after the final protest date. Based on the State Engineer's failure to act on the applications in this case, we further conclude that an equitable remedy is warranted. We determine that the State Engineer must re-notice SNWA's 1989 applications and reopen the period during which appellants may file protests. Thus, we reverse the order of the district court and remand the matter to the district court with instructions to remand the matter to the State Engineer for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

In 1989, the Las Vegas Valley Water Department (LVVWD) filed approximately 146 applications with the State Engineer to ap-

propriate public water from groundwater sources in various areas in Nevada. LVVWD's intended purpose was to pump the water to the greater Las Vegas area. With nearly 800,000 acre-feet per year of groundwater at issue, the State Engineer referred to the project as "the largest interbasin appropriation and transfer of water ever requested in the history of the state of Nevada."[1]

In 1990, the State Engineer published statutory notice of the applications in the counties in Nevada where the water was to be appropriated. In response, more than 830 protests were filed with the State Engineer. Although NRS 533.370(2), as it existed at the time, required the State Engineer to take action on applications within one year after the close of the protest period, unless he identified an ongoing water study or court action, the State Engineer did not rule on the applications at issue in this case or identify an exception that permitted postponement of action within the allotted time.

In 1991, SNWA was formed to address and secure the water needs for the millions of residents of and visitors to the Las Vegas valley. SNWA acquired LVVWD's rights to the 1989 groundwater applications as a successor in interest. Thereafter, between 1991 and 2002, LVVWD withdrew some of the 1989 applications, and the State Engineer held hearings and issued rulings on several other 1989 applications. This appeal concerns 34 of SNWA's remaining 1989 groundwater applications in the Spring, Snake, Cave, Dry Lake, and Delamar Valleys. Although there are 54 appellants to this appeal, we have identified five groups of appellants. First, there are 11 "original protestants," who filed original protests in 1989 and 1990, but argue that because of the 16-year delay following the filing of the applications, they did not receive adequate notice of the 2005 prehearing conference or the 2006 hearings. Second, there are the "new" property owners, who moved to or established themselves in affected valleys after 1989. Third, there are five property owners who either inherited or purchased their property interest from an original protestant. Fourth, there are residents of Utah who live on the Utah side of Snake Valley, and argue that they never received notice of the applications in 1989 and thus did not file protests. Fifth, there are at least three national environmental and wildlife organizations that have evolved since 1989, and argue that the State Engineer has effectively blocked them from protecting their interests because they did not file protests in 1989 and 1990.

In October 2005, the State Engineer notified roughly 300 people by certified mail that a prehearing conference would be held in January 2006 to discuss issues related to protest hearings on the 34

---

[1]The quantity of water proposed to be pumped was later reduced to approximately 190,000 acre-feet per year.

groundwater applications. Hundreds of the certified mailings were returned undelivered, including mailings to 11 of the appellants in this case. The State Engineer did not attempt to resend the mailings or follow up on those mailings that were returned. At the January 2006 prehearing conference, the State Engineer heard from people who filed formal protests in 1989,[2] along with others who expressed public comment.[3] Because of the 16-year lapse between the filing of the applications and the hearings on the applications, some attendees, including appellant Abigail Johnson, through her attorney, requested that the State Engineer re-notice SNWA's applications and reopen the protest period.

In March 2006, the State Engineer issued an order denying the request to re-notice the applications and scheduled a September 2006 hearing for applications concerning the Spring Valley water basin. The State Engineer recognized the significant lapse of time between the filing of the applications and the hearings and acknowledged that the delay signified to the public that SNWA did not intend to pursue the pumping project. However, the State Engineer also found that, without the public's knowledge, SNWA had been dedicating substantial time to prepare for hearings on the applications. SNWA explained that the magnitude of the groundwater project and the number of protests required significant preparation during the 1990s and early 2000s. However, neither the State Engineer nor SNWA offered evidence that a water study had been ordered or that the applicant and protestants authorized the State Engineer to postpone taking action on the 1989 applications.

In July 2006, appellants filed a petition with the State Engineer, requesting, in part, that the State Engineer re-notice SNWA's remaining applications from 1989 and reopen the protest period. The State Engineer summarily denied the petition, reasoning that it was analogous to a request for reconsideration under NRS 622A.390, and reconsideration was not warranted.

In August 2006, appellants filed a petition for judicial review with the district court, seeking review of the State Engineer's order denying the request to re-notice SNWA's applications. In May 2007, the district court denied the petition for judicial review. The district court determined that the State Engineer did not abuse his discretion in denying the request because there is no statutory provision that requires or authorizes additional notice of water ap-

---

[2]Only one appellant in this case, Abigail Johnson, participated as a protestant at the January 2006 prehearing conference because she had protested the Spring Valley applications in 1989. However, in this appeal, she is also a new property owner because now she seeks to also protest the Snake Valley applications.

[3]Only one appellant in this case, Nomi Martin-Sheppard, provided public comment at the January 2006 prehearing conference.

propriation outside of the statutory time period. Citing the 2003 legislative amendment to NRS 533.370(2)—the statute that requires the State Engineer to take action on an application within one year—the district court stated that Nevada water law takes into account a time lapse between the original filing of an application and a hearing.

In April 2007, while the petition for judicial review was pending in the district court, the State Engineer ruled on the applications that concerned the Spring Valley water basin. The State Engineer upheld some protests and overruled others. Of the 54 appellants to this appeal, one participated in the Spring Valley hearing. No petition for judicial review was filed concerning the State Engineer's April 2007 Spring Valley order, but appellants filed this appeal of the district court's May 2007 denial of the August 2006 petition for judicial review.

## DISCUSSION

Appellants appeal the district court's denial of the petition for judicial review on multiple grounds, only one of which is pertinent to our disposition. The determinative issue in this appeal is whether SNWA's 1989 groundwater appropriation applications were still pending before the State Engineer in 2003, despite the State Engineer's failure to take action on them within one year of the closing of the protest period, as required by the former version of NRS 533.370(2). In denying appellants' petition for judicial review, the district court interpreted the 2003 version of NRS 533.370 to apply retroactively to the 1989 applications.[4] We disagree.[5] We review a district court's statutory construction determination de novo. *Sonia F. v. Dist. Ct.*, 125 Nev. 495, 499, 215 P.3d 705, 707 (2009).

### NRS 533.370 as it existed in 1989

Appellants argue that the State Engineer violated his statutory duty because he did not rule on SNWA's 1989 applications within one year after the final date for filing a protest and that the district court erred in failing to address this argument when it was raised below.

In 1989, NRS 533.370(2) required the State Engineer to take action on water appropriation applications within one year after the final date for filing a protest, subject to three exceptions:

---

[4]NRS 533.370 has been amended twice since 2003, but such amendments do not substantively affect the provision at issue in this case.

[5]Because we reverse and remand on the issue of statutory construction, we do not reach the merits of appellants' other arguments on appeal.

The state engineer *shall* either approve or reject each application within 1 year after the final date for filing protest. However:

(a) Action can be postponed by the state engineer upon written authorization to do so by the applicant or, in case of a protested application, by both the protestant and the applicant; and

(b) In areas where studies of water supplies are being made *or* where court actions are pending, the state engineer may withhold action.

(Emphases added.)

This court has determined that " '[t]he word "shall" is a term of command; it is imperative or mandatory, not permissive or directory.' " *Blaine Equip. Co. v. State, Purchasing Div.*, 122 Nev. 860, 867, 138 P.3d 820, 824 (2006) (alteration in original) (quoting *Adkins v. Oppio*, 105 Nev. 34, 37, 769 P.2d 62, 64 (1989)). Therefore, we conclude that the State Engineer violated his duty by failing to act on the applications within one year of the closing of the protest period, unless, pursuant to the 1989 version of NRS 533.370(2)(a) or (b), the State Engineer properly postponed action on the applications beyond the one-year statutory requirement.

*The State Engineer did not request written authorization to postpone action*

In 1989, NRS 533.370(2)(a) permitted the State Engineer to postpone action on water appropriation applications if he received written authorization from the applicant and any protestants to the applications. Appellants assert that the State Engineer neither sought nor received written authorization from SNWA or any protestants to the 1989 applications to postpone action. Neither the State Engineer nor SNWA dispute appellants' assertion.[6] Because no evidence in the record indicates that the State Engineer obtained written authorization from either SNWA or the protestants, we conclude that the 1989 version of NRS 533.370(2)(a) did not provide a basis for postponement of action on the applications.

*The State Engineer did not state that a water supply study or pending court action necessitated postponement of action*

The State Engineer was also permitted to postpone action on SNWA's applications if a water supply study was being conducted

---

[6]SNWA argues that it would have been "unreasonable and unworkable" to require the State Engineer to obtain written authorization from the over 800 protestants in 1989. However, SNWA's impracticability argument does not alter the fact that a plain reading of the 1989 version of NRS 533.370(2)(a) required such authorization.

or a court action on the applications was pending in 1989. *See* NRS 533.370(2)(b) (1989). Appellants contend that neither a water supply study nor a court action had·occurred by 1991. SNWA concedes that there was no court action; however, SNWA argues that the State Engineer determined that a hydrologic study was necessary before taking action on the applications.

To support its argument, SNWA directs this court to two rulings made by the State Engineer in 2001 and 2002 regarding various 1989 applications seeking to appropriate water from basins and aquifers in other regions of Nevada. There is no evidence in the record to indicate that the State Engineer postponed action on the applications at issue in this appeal by 1991 because of the need for hydrologic studies. Consequently, we determine that the State Engineer's delay in taking action was not excused pursuant to the 1989 version of NRS 533.370(2)(b).

*The 2003 legislative amendment to NRS 533.370 does not apply retroactively to the 1989 applications*

Appellants contend that a 2003 amendment to NRS 533.370 that allows the State Engineer to postpone action on groundwater appropriation applications made for municipal use does not apply retroactively and, thus, the State Engineer must re-notice SNWA's 1989 applications and reopen the protest period. SNWA maintains that the 2003 amendment does apply retroactively, thus excusing the State Engineer's failure to comply with NRS 533.370 as it existed prior to the 2003 amendment.[7]

In 2003, the Legislature amended NRS 533.370 to permit the State Engineer to postpone action on applications made for municipal purposes. *See* 2003 Nev. Stat., ch. 474, § 2, at 2980-81. Importantly, the Legislature specified the following water appropriation applications to which the amendment in NRS 533.370(2) applies: "1. Each application . . . that is made on or after July 1, 2003; and 2. Each such application that is *pending* with the office of the State Engineer on July 1, 2003." *Id.* § 18, at 2989 (emphasis added).

Therefore, because SNWA's applications were made for municipal use, and the State Engineer did not rule on SNWA's 1989 applications within one year after the final date for filing a protest, we must determine whether SNWA's 1989 applications were pending in 2003. If the applications were pending, the State Engineer would have been statutorily authorized to postpone a ruling without approval from SNWA and the protestants.

---

[7]Perplexingly, the State Engineer failed, in his answering brief, to address the determinative issue of whether the 2003 amendment applies retroactively and, instead, placed blame on appellants for not "complain[ing] about the delay until now."

Appellants argue that the 1989 applications were not pending in 2003 because they effectively lapsed one year after the protest period ended. They assert that the reasonable interpretation of the term "pending," as used by the Legislature in regard to the application of the 2003 amendment to NRS 533.370, is that only applications filed within one year of the amendment's enactment in 2003 are still before the State Engineer. SNWA argues that the 1989 applications were pending because the Legislature intended that the municipal-use exception apply retroactively. SNWA infers this legislative intent from the fact that the Legislature included a provision specifying that the amendment applied to pending applications, instead of specifying only prospective application of the amendment.

To determine legislative intent, this court will not go beyond a statute's plain language if the statute is facially clear. *Bacher v. State Engineer*, 122 Nev. 1110, 1117, 146 P.3d 793, 798 (2006). An ambiguous statute is one that is capable of more than one reasonable interpretation. *Id.* at 1117-18, 146 P.3d at 798. When a statute is ambiguous, this court determines the Legislature's intent by evaluating the legislative history and construing the statute in a manner that conforms to reason and public policy. *Attorney General v. Nevada Tax Comm'n*, 124 Nev. 232, 240, 181 P.3d 675, 681 (2008). This court "avoids statutory interpretation that renders language meaningless or superfluous." *Karcher Firestopping v. Meadow Valley Contr.*, 125 Nev. 111, 113, 204 P.3d 1262, 1263 (2009). Whenever possible, we interpret "statutes within a statutory scheme harmoniously with one another to avoid an unreasonable or absurd result." *Allstate Insurance Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009).

Appellants' and SNWA's arguments demonstrate that the effective date applicable to the amendment made in subsection 2 of the 2003 version of NRS 533.370 regarding pending groundwater appropriation applications is ambiguous because it is susceptible to more than one reasonable interpretation. Thus, we first turn to the legislative history to determine legislative intent. After examining the legislative history, it is clear that SNWA requested the 2003 municipal-use amendment, but, unfortunately, the legislative history provides no guidance regarding retroactive effect of the amendment to *pending* applications. *See* Hearing on S.B. 336 Before the Assembly Comm. on Natural Resources, Agriculture, and Mining, 72d Leg. (Nev., April 30, 2003); *see also* Hearing on

S.B. 336 Before the Senate Comm. on Natural Resources, 72d Leg. (Nev., March 26, 2003).[8]

We next consider legislative intent by construing the statute in a manner consistent with reason and public policy. Although the retroactive effect of NRS 533.370(2) evidences the Legislature's intent that the statute apply to applications for municipal use that were filed prior to the enactment of the amendment, we conclude that appellants' interpretation of the word "pending" is the more reasonable one for four reasons.

First, by setting a timeline for the approval or rejection of groundwater appropriation applications within one year in NRS 533.370(2), we determine that the Legislature intended to prevent a significant lapse of time before a ruling. There is no language in the statute or the legislative history that indicates an intention by the Legislature that the amendment for municipal use apply retroactively to applications made more than one year prior to the amendment's enactment. Requiring approval to postpone an application from both the applicant and the protestant demonstrates that the Legislature recognizes the significant interests of both parties and intended to ensure that both parties receive adequate notice of the postponement of action on applications. Therefore, without the Legislature's explicit intent to the contrary, it would be inequitable to allow applications to linger for years without obtaining the parties' written authorization to postpone action or providing adequate notice of the initiation of hearings on stale applications.

Second, the 1989 version of NRS 533.370(2) mandated that the State Engineer rule on an application within one year, and the

---

[8]For unknown reasons, SNWA failed to address any legislative history until its petition for rehearing. Regardless, we conclude that the legislative history to which SNWA cites in its petition for rehearing, including episodic comments by legislators during various legislative sessions between 1991 and 2003, does not support its contention that the 2003 Legislature intended the 2003 amendment to apply retroactively. Moreover, we recognize that "prior legislative history is a hazardous basis for inferring the intent of a subsequent [Legislature]." *Waterkeeper Alliance, Inc. v. U.S. E.P.A.*, 399 F.3d 486, 508 (2d Cir. 2005).

Similarly, the court is mindful of presentments to the Legislature during the recent 26th Special Session seeking clarification of the legislative intent behind the 2003 amendment to NRS 533.370. The court cautions against such action, as "subsequent legislative history is a 'hazardous basis for inferring the intent of an earlier' [Legislature]." *Pension Benefit Guaranty Corp. v. The LTV Corp.*, 496 U.S. 633, 650 (1990) (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)). Declarations of intent by a subsequent Legislature, especially those occurring after commencement of this litigation, are "entitled to little if any weight." *Teamsters v. United States*, 431 U.S. 324, 354 n.39 (1977). We are concerned here about the intent of the Legislature that amended NRS 533.370 in 2003, not the intent of a previous or subsequent Legislature. *See id.*

2003 amendments do not contain a clear indication of retroactive effect. Thus, to determine that there would be no consequence for not issuing a ruling within one year would render the statutory timeline superfluous.

Third, a reading consistent with SNWA's interpretation of the 2003 amendment would deprive at least 11 appellants who are original protestants of SNWA's 1989 applications of their due process right to grant or withhold authorization to postpone action by the State Engineer on the 1989 applications. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428-29 (1982).

Fourth, there is no indication that the Legislature intended that the 2003 amendment to NRS 533.370(2) apply to every groundwater appropriation application ever filed in the office of the State Engineer. Such an interpretation would produce absurd results. Rather, in reading the statutory provisions together, the more reasonable interpretation of ''pending'' is that it refers to those applications in which the one-year period for the State Engineer to take action had not yet elapsed. Because the period had not occurred, the State Engineer would have been able to postpone action based on one of the exceptions in NRS 533.370(2). We therefore conclude that the Legislature intended to designate as ''pending'' on July 1, 2003, only those applications in which the one-year period under NRS 533.370(2) had not arrived. We determine that the 2003 amendment to NRS 533.370(2) does not apply retroactively and that the district court erred when it found that the 2003 amendment applied to SNWA's 1989 applications. Therefore, we conclude that the State Engineer violated his statutory duty by failing to rule on SNWA's 1989 applications within one year of the close of the protest period.

*Remedy for the State Engineer's failure to rule on SNWA's applications within one year of the close of the protest period*

We conclude that the State Engineer violated his statutory duty by ruling on applications well beyond the one-year statutory limitation without first properly postponing action.[9] Therefore, the district court erred in denying appellants' petition for judicial review. In the absence of a statutory remedy for noncompliance with the timing requirements of NRS 533.370, we must determine the proper remedy. Both parties posit that a proper remedy may be that the State Engineer should re-notice and reopen the protest period.[10]

---

[9]We note that the record on appeal demonstrates that the State Engineer has ruled on the Spring Valley applications. The State Engineer held hearings on the Delamar, Dry Lake, and Cave Valley applications in February 2008, and a hearing on the Snake Valley applications has not been scheduled.

[10]For the first time on appeal, appellants request, as an alternative remedy, that SNWA be required to file new applications. We decline to consider ap-

We have previously recognized the district court's power to grant equitable relief when water rights are at issue. *See, e.g.,* *Engelmann v. Westergard,* 98 Nev. 348, 647 P.2d 385 (1982); *State Engineer v. American Nat'l Ins. Co.,* 88 Nev. 424, 498 P.2d 1329 (1972). Additionally, in *Bailey v. State of Nevada,* a water permit cancellation case, this court expanded the equitable relief granted by the district court, impliedly recognizing our ability also to award equitable relief. 95 Nev. 378, 383, 594 P.2d 734, 737 (1979). We take this opportunity to confirm that this court has the power to grant equitable relief in water law cases.

Voiding the State Engineer's ruling and preventing him from taking further action would be inequitable to SNWA and future similarly situated applicants. And applicants cannot be punished for the State Engineer's failure to follow his statutory duty. Similarly, it would be inequitable to the original and subsequent protestants to conclude that the State Engineer's failure to take action results in approval of the applications over 14 years after their protests were filed. Thus, we cannot conclude that the State Engineer's inaction deems the applications either approved or rejected. *See Barnhart v. Peabody Coal Co.,* 537 U.S. 149, 159 (2003) (stating that " 'if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction' " (quoting *United States v. James Daniel Good Real Property,* 510 U.S. 43, 63 (1993))).

Instead, we conclude that, in circumstances in which a protestant filed a timely protest pursuant to NRS 533.365 and/or appealed the State Engineer's untimely ruling, the proper and most equitable remedy is that the State Engineer must re-notice the applications and reopen the protest period. Accordingly, we reverse the district court's order denying appellants' petition for judicial review and remand the matter to the district court with instructions to, in turn, remand the matter to the State Engineer for further proceedings consistent with this opinion.

PARRAGUIRRE, C.J., and DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.

---

pellants' untimely request. *See State, Bd. of Equalization v. Barta,* 124 Nev. 612, 621, 188 P.3d 1092, 1098 (2008) (stating that "this court generally will not consider arguments that a party raises for the first time on appeal").