142 Nev., Advance Opinion 10

IN THE SUPREME COURT OF THE STATE OF NEVADA

GOLD STANDARD VENTURES (US) INC., A WHOLLY OWNED SUBSIDIARY OF ORLA MINING LTD., Appellant,
vs.
CHRIS THORSON, P.E., NEVADA STATE ENGINEER, DIVISION OF WATER RESOURCES, DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, Respondent.

No. 88139

FILED

FEB 12 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order dismissing a petition for judicial review of a decision by the Nevada State Engineer. Fourth Judicial District Court, Elko County; Mason E. Simons, Judge.

*Affirmed.*

Taggart & Taggart, Ltd., and Paul G. Taggart, Thomas P. Duensing, Timothy D. O'Connor, and David H. Rigdon, Carson City, for Appellant.

Aaron D. Ford, Attorney General, and Jordan Gregory Cloward and Kevin Dale Doty, Deputy Attorneys General, Carson City, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, PARRAGUIRRE, J.:

Appellant Gold Standard Ventures (US) Inc. is a wholly owned subsidiary of Orla Mining Ltd. (collectively Orla). Orla has attempted to

26-07165

secure water rights in the Dixie Creek-Tenmile Creek basin to open a mining operation. In 2023, Adam Sullivan, the former Nevada State Engineer, made a determination relating to the water rights of a separate entity within the basin that ostensibly reduced the amount of water available for future appropriation, thereby diminishing Orla's chance of obtaining prospective water rights.[1] When Orla learned of the decision, it filed a petition for judicial review with the district court.

The district court dismissed Orla's petition after concluding that Orla lacked standing to challenge the decision and that the petition was untimely pursuant to NRS 533.450(1). Orla now appeals, arguing the district court erred in determining it lacks standing to challenge the decision, deeming its petition untimely, and not considering equitable relief. We conclude the district court was correct in determining that Orla lacked standing to challenge the decision of the State Engineer. Accordingly, we affirm the order of the district court without reaching Orla's remaining arguments.

## FACTS AND PROCEDURAL HISTORY

The Dixie Creek-Tenmile Creek basin encompasses water rights affected by the South Fork Reservoir, 15 miles south of Elko. In July 2021, the State Engineer stated that he was seeking to offset annual evaporative losses in the South Fork Reservoir through water sources used to replenish the reservoir. The Nevada Division of State Lands (NDSL) then filed a Proof of Application of Water to Beneficial Use (PBU), claiming to have put 4,000 acre-feet annually (afa) of its groundwater rights to beneficial use through evaporation.

---

[1]Respondent Chris Thorson, P.E., was named acting State Engineer on December 11, 2025, after the proceedings below concluded.

Orla, which had hoped to purchase or lease some of NDSL's groundwater rights, then filed (1) a written objection, requesting that the State Engineer deny NDSL's PBU; (2) 11 groundwater right applications to gain priority rights to unused water in the basin; and (3) a request to receive notification of all of the State Engineer's decisions regarding water in the basin (the request for correspondence). The request for correspondence was aimed at allowing Orla to be copied on all correspondence related to the water rights at issue and is a procedure the State Engineer generally follows without any statutory obligation to do so.

In 2023, NDSL emailed a letter to the State Engineer authorizing the withdrawal of its PBU and the conditional relinquishment of portions of its groundwater rights, which would be restored to NDSL only "in the unlikely event" that the South Fork Dam is decommissioned and the reservoir is drained. On March 17, 2023, the State Engineer granted that request in a letter sent to NDSL. The decision purported to ensure that over 5,000 afa of the groundwater rights relinquished by NDSL "will remain a committed resource and will not be available for appropriation." Despite Orla's request for correspondence, Orla was not sent a copy of the decision. As a result, Orla did not learn of the State Engineer's decision until a third party sent the decision to Orla on August 17, 2023, five months after the letter was sent to NDSL.

Believing that the decision may have an adverse impact on the prospects for approval of its water right applications, Orla filed a petition for judicial review with the district court on September 15, 2023, challenging the State Engineer's decision to allow NDSL to withdraw its PBU and relinquish portions of its water rights. The State Engineer filed a motion to dismiss the petition, arguing Orla lacked standing and the petition was untimely. The district court granted the State Engineer's

motion, concluding, in relevant part, that Orla was not an aggrieved party under NRS 533.450(1) and had no standing to seek review. The court also deemed the petition untimely. Orla now challenges the dismissal of its petition.

## DISCUSSION

The district court determined Orla did not meet the statutory requirements for standing under NRS 533.450(1) because Orla did not have a personal or property right affected by the decision. The district court's determination in that respect implicates questions of standing and statutory interpretation, both of which we review de novo. *See Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 629, 218 P.3d 847, 850 (2009) (applying de novo review in deciding upon whom a statute conferred standing); *Wilson v. Pahrump Fair Water, LLC*, 137 Nev. 10, 14, 481 P.3d 853, 856 (2021) (applying de novo review to issues of statutory interpretation).

NRS 533.450(1) provides, in relevant part, that

> any person feeling aggrieved by any order or decision of the State Engineer . . . affecting the person's interests, when the order or decision relates to the administration of determined rights . . . may have the same reviewed by a proceeding for that purpose, insofar as may be in the nature of an appeal.

Orla and the State Engineer provide competing interpretations of the scope of standing conferred by this language.[2] Though the decision must relate to

---

[2]NRS 533.450(1) also provides standing if the decision does not relate to the administration of determined rights but "is made pursuant to NRS 533.270 to 533.445, inclusive, or NRS 533.481, 534.193, 535.200 or 536.200." We do not address these grounds for standing as the decision in this case was not made pursuant to any of these statutes.

the administration of determined rights, Orla argues that the rights affected do not necessarily need to belong to the party asserting standing. But the State Engineer argues the statute requires that the decision at issue affects interests related to the determined rights of the party asserting standing. As these competing interpretations are both reasonable, we conclude that the statute is ambiguous and therefore look to public policy and the context of the statute to resolve this ambiguity. *See Great Basin Water Network v. Taylor*, 126 Nev. 187, 196, 234 P.3d 912, 918 (2010) (explaining that a statute is ambiguous if it is susceptible to more than one reasonable interpretation and stating that, when a statute is ambiguous, this court will "constru[e] the statute in a manner that conforms to reason and public policy"); *Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007) (stating that when a statute is ambiguous, the court will "examin[e] the context and the spirit of the law" (quoting *McKay v. Bd. of Supervisors*, 102 Nev. 644, 650-51, 730 P.2d 438, 443 (1986))).

Orla argues from a public policy standpoint that NRS 533.450(1) purposefully confers broad standing where water rights are at issue because water is a finite resource, and any decision related to senior water rights might affect the interests of those with pending applications. As applied here, Orla argues that because the State Engineer's decision ostensibly reduces the pool of water available for future appropriation within the basin, the decision will have an adverse impact on the prospects of its water right applications being granted, which in turn will adversely affect Orla's interests related to its mining operation.[3]

---

[3]Orla further argues on appeal that it has an interest in its opposition to NDSL's PBU being heard. That opposition was rendered moot by NDSL's voluntary withdrawal of the PBU. Further, there is no statutory or legal basis for Orla's objection.

We must assume as true the allegation that the State Engineer's decision will adversely impact Orla's applications and, therefore, the prospects of its mining operation. *See Marvin v. Fitch*, 126 Nev. 168, 173, 232 P.3d 425, 428 (2010) (stating that in reviewing an order granting a motion to dismiss, this court accepts the factual allegations in the operative pleading as true). But Orla's position regarding NRS 533.450(1) is inconsistent with general statutory standing principles and the legislature's intent. Orla's suggested result would provide every person or entity with a pending water rights application with standing to challenge any decision related to senior water rights based on the theory that they might obtain water rights if the outcome of the decision were different. We see nothing in the language or purpose of the statute to suggest that the legislature intended to confer such broad standing in this context.

Our conclusion is consistent with common principles of statutory standing, which generally require the party asserting standing to have a personal or property right affected by the decision. *See, e.g.*, NRS 233B.110 (providing standing to challenge the validity or application of a regulation only where the regulation affects "the legal rights or privileges of the plaintiff"); *NAMIC v. State, Dep't of Bus. & Indus., Div. of Ins.*, 139 Nev. 18, 22, 524 P.3d 470, 476 (2023) (recognizing statutory standing "where the Legislature has created a *right* and provided a statutory vehicle to vindicate that *right*" (emphases added)). Moreover, the language of NRS 533.450(1) states that judicial review of the decision is "in the nature of an appeal." We have previously held that a party is "aggrieved" within the meaning of NRAP 3A(a) and has standing to appeal only "'when either a personal right or right of property is adversely and substantially affected' by a [decision]." *Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 446, 827 P.2d 729, 734 (1994) (quoting *In re Est. of Hughes v. First Nat'l Bank of*

*Nev.*, 96 Nev. 178, 180, 605 P.2d 1149, 1150 (1980)). Finally, in the administrative context, "[t]he law is well settled that the right to review an administrative decision is limited to those parties to the proceedings before the administrative agency whose rights, privileges, or duties are affected by the decision." *Eikelberger v. Nev. State Bd. of Acct.*, 91 Nev. 98, 99-100, 531 P.2d 853, 854 (1975); *see also United States v. State Eng'r*, 117 Nev. 585, 589, 27 P.3d 51, 53 (2001) (referring to the State Engineer as an "administrative agency[ ]").

Here, NRS 533.450(1) plainly states that the "order or decision [must] relate[ ] to the administration of determined rights." We have stated that a person may challenge a State Engineer's decision pursuant to NRS 533.450(1) "so long as the decision affects the person's interests *concerning the rights*." *Howell v. Ricci*, 124 Nev. 1222, 1223, 197 P.3d 1044, 1045 (2008) (emphasis added). Orla's interests here are not connected to any personal or property right of Orla affected by the decision. A petitioner cannot unilaterally insert itself into proceedings related to *another party's rights* and claim standing simply because they believe the decision might adversely affect tangentially related interests.[4] The petitioner itself must have some type of existing personal or property right affected by the

___

[4]The dissent relies on *Sierra Pacific Industries v. Wilson*, 135 Nev. 105, 440 P.3d 37 (2019), in stating this court has previously conferred standing on a party seeking cancellation of water rights based on their interests rather than their already-determined rights. However, the court in *Sierra* solely discussed the application of the anti-speculation doctrine in the context of requests for extensions of time. *See Sierra*, 135 Nev. at 106, 440 P.3d at 39. The *Sierra* court made no findings in regard to standing and remanded the case to the district court to make further evidentiary findings. *See id.* at 111-12, 440 P.3d at 42-43. Therefore, *Sierra* is readily distinguishable and offers no support for the dissent's position.

decision.[5] Here, Orla has not demonstrated any existing right affected by NDSL's relinquishment, but only layers of speculation about a potential future interest. Orla had no existing water rights negatively affected by the decision, and thus, it could not unilaterally insert itself into proceedings between NDSL and the State Engineer. Accordingly, we conclude Orla is not an aggrieved party under NRS 533.450(1) and lacks standing to challenge the decision of the State Engineer.

In addition to statutory standing principles, we must also consider public policy to resolve the ambiguity of NRS 533.450(1). *See Great Basin Water Network*, 126 Nev. at 196, 234 P.3d at 918. Though Orla argues public policy favors its position that the statute confers broad standing, our decision today is in line with recent Nevada legislation. In June 2025, Assembly Bill 104 and Senate Bill 36 were signed into law, establishing the Nevada Voluntary Water Rights Retirement Program. *See* 2025 Nev. Stat., ch. 226, § 8, at 1401; A.B. 104, 83rd Leg. (Nev. 2025); *see also* 2025 Nev. Stat., ch. 292, § 8, at 1939; S.B. 36, 83rd Leg. (Nev. 2025). The Program, to be codified in relevant part in NRS Chapter 232 and NRS Chapter 534, enables decreed or certificated water rights holders to voluntarily sell or donate their rights to the Program. *See* 2025 Nev. Stat., ch. 292, § 8, at 1939. The legislation also provides that once rights are relinquished, those rights are legally extinguished, leaving nothing left to challenge or claim as "[a]ny . . . groundwater right that has been retired . . . is not available for any use and shall be deemed to be retired in the source in perpetuity." *See id.* § 8, at 1940. By enacting the Program, the legislature underscores that

---

[5]To be clear, we do not hold today, as the dissent suggests, that the petitioner must have been a party to the proceeding before the State Engineer to assert standing. Where the nonparty petitioner's existing rights are affected by the decision, there remains an avenue to standing.

the voluntary relinquishment of water rights is a lawful act within the discretion of the water rights holder. *See id.* § 10.7, at 1941. The Program envisions relinquishment to involve the holder, the State Engineer, and the Director of the State Department of Conservation and Natural Resources with the goal of protecting Nevada's water resources. *See* 2025 Nev. Stat., ch. 226, § 8, at 1401; *see also* 2025 Nev. Stat., ch. 292, § 8, at 1939.

In the instant case, NDSL voluntarily relinquished over 5,000 afa of its own groundwater rights in a mutual transaction with the State Engineer, ensuring precious groundwater rights "[would] remain a committed resource and [would] not be available for appropriation." Such relinquishment is consistent with recently enacted A.B. 104 and S.B. 36. The dissent's and Orla's position regarding NRS 533.450(1) would undermine the legislature's recent enactment by effectively allowing any person seeking water rights to challenge voluntary relinquishment. Such a result would interfere with the ability of water rights holders to freely alienate their water rights and their ability to participate in the Program. Given the ambiguity in NRS 533.450(1), the enactment of the Program further reinforces the legislature's policy and intent to maintain the ability of water rights holders to voluntarily relinquish their rights without fear of external challenge from those with tangentially related or speculative interests. Therefore, we are confident in our decision that Orla lacked standing to challenge the instant relinquishment.

Because Orla lacks standing to seek judicial review, we need not reach the questions of timeliness or equitable tolling.[6]

---

[6]Orla also argues on appeal that the State Engineer, by failing to abide by the request for correspondence, failed to provide Orla with due process. Because Orla had no existing rights affected by the decision, notice to Orla was not required. *See Wilson*, 137 Nev. at 18-19, 481 P.3d at

## CONCLUSION

NRS 533.450(1) provides standing to seek judicial review of a decision of the State Engineer. We conclude that where the decision is not made pursuant to NRS 533.270 to 533.445, inclusive, or NRS 533.481, 534.193, 535.200, or 536.200, the party seeking review must have a personal or property right affected by the challenged decision. Accordingly, we affirm the order of the district court dismissing Orla's petition for judicial review.

_____, J.
Parraguirre

We concur:

_____, C.J.
Herndon

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Lee

---

859-60 (indicating that no notice is required where the decision did not limit established water rights); *cf. Perry v. Sindermann*, 408 U.S. 593, 603 (1972) (stating "a mere subjective 'expectancy' is [not] protected by procedural due process").

SUPREME COURT
OF
NEVADA

(O) 1947A

PICKERING, J., dissenting:

NRS 533.450(1) affords judicial review to any person whose interests are adversely affected by a State Engineer's decision. The district court held that to have standing under this statute, the petitioner must have been a party before the State Engineer whose determined rights the decision affects. Affirming, the majority holds that, to have standing, the petition must show that the decision adversely affects the petitioner's existing personal or property rights. These requirements, the majority says, are "consistent with common principles of statutory standing." But statutory standing does not involve "common principles" or establish formulaic criteria that apply generically across the wide range of statutory schemes that exist in our statute books. Unlike constitutional standing, which does apply set criteria, for statutory standing it is "the language of the statute itself [that] determine[s] whether the plaintiff ha[s] standing to sue." *Stockmeier v. Nev. Dep't of Corr.*, 122 Nev. 385, 393, 135 P.3d 220, 226 (2006), *disavowed in part on other grounds by Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008); *Citizens for Cold Springs v. City of Reno*, 125 Nev. 625, 630-31, 218 P.3d 847, 851 (2009). Because the language of NRS 533.450(1) does not support the strict standing requirements the district court adopted and the majority largely approves, I respectfully dissent.

Statutory standing analysis properly begins with the text of NRS 533.450(1). It provides that "any person feeling aggrieved by any order or decision of the State Engineer . . . affecting the person's interests" may seek judicial review "when the order or decision relates to the administration of determined rights or is made pursuant to NRS 533.270 to 533.445, inclusive, or NRS 533.481, 534.193, 535.200 or 536.200." As

written, this provision confers statutory standing on (1) *"any person"* (2) whose *"interests"* are *"affected"* in a way that leaves them "feeling *aggrieved"* (3) by *"any order or decision"* of the State Engineer that "relates to the administration of determined rights" *or* "is made pursuant to" the range of statutes NRS 533.450(1) specifies. Important here, that range encompasses NRS 533.395 and NRS 533.400, which impose the proof of beneficial use (PBU) requirements that Orla contends the State Engineer and Nevada Division of State Lands (NDSL) dishonored with the conditional relinquishment agreed to in this case.

On a plain-text reading, NRS 533.450 permits any *person*—not *party*—to seek review of any order covered.[1] Though the majority recognizes this deliberate choice of words, it fails to understand the significance of that choice. As we previously noted, "the phrase 'any person' signifies inclusiveness, not limitation." *In re Nev. State Eng'r Ruling No. 5823*, 128 Nev. 232, 239, 277 P.3d 449, 454 (2012). Further, statutes promulgated for the public benefit should be construed liberally and interpreted broadly. *Cold Springs*, 125 Nev. at 631, 218 P.3d at 851. For example, in *Cold Springs*, this court considered a statute giving standing to "any person . . . claiming to be adversely affected" by an annexation decision and concluded that this language conferred standing on landowners who

---

[1]Although NRS 533.450 does not require a petitioner to have been a party before seeking judicial review, the underlying statutes allowing for judicial review under NRS 533.450 may still impose exhaustion requirements that a petitioner must meet. *See Benson v. State Eng'r*, 131 Nev. 772, 782, 358 P.3d 221, 228 (2015) (concluding that under NRS 533.395, one of the statutes referenced in NRS 533.450, those "aggrieved by the cancellation of a water permit" must "exhaust all available administrative remedies pertaining to the State Engineer's decision on a water permit before filing a petition for judicial review").

lived next to but not within the proposed annexation area. *Id.* (quoting NRS 268.668). This decision illustrates the breadth of statutory standing that the phrase "any person" confers.

Both the district court and the majority rely upon authority applying general administrative law principles to other administrative agencies. But unlike NRS 533.450(1), Nevada's general administrative agency review statute limits judicial review in contested cases to persons who were "parties" to the administrative proceeding. NRS 233B.130(1). And with one exception not applicable here, the State Engineer is "entirely exempted" from Nevada's Administrative Procedure Act. NRS 233B.039(1)(i). General administrative law authorities are thus of limited use here. Further, the difference between the wording in those two statutes is crucial. NRS 533.450's use of the word "person" and not the word "party" signifies that standing to seek judicial review of a State Engineer decision or order extends beyond parties before an administrative proceeding and is broader than in the contested case context generally. This difference makes intuitive sense, for unlike most administrative adjudications that impact only one person's rights, proceedings before the State Engineer potentially affect the interests of many people and, as this case illustrates, can be informal and summary at the same time. *Cf. Desert Valley Water Co. v. State*, 104 Nev. 718, 721, 766 P.2d 886, 887 (1988) (noting that because a district court's decision on a petition for judicial review of a State Engineer's decision potentially affects the interests of persons not parties at the administrative level, such persons may be added as parties in district court).

The Supreme Court's recent decision in *Food & Drug Administration v. R. J. Reynolds Vapor Co.*, 606 U.S. 226 (2025), is instructive. That case concerned a statute that gave a right of judicial

review to "any person adversely affected" by an FDA order denying approval of a new tobacco product. *Id.* at 230-31; *see* 21 U.S.C. § 387*l*(a)(1). The Court determined that the statute's broad language gave not only manufacturers who directly applied for a Food and Drug Administration permit, but also independent, downstream retailers, standing to sue when the FDA denied a manufacturer a permit. *R. J. Reynolds Vapor Co.*, 606 U.S. at 230. After all, using the phrase "any person adversely affected" to "describe a cause of action that only one person—the applicant manufacturer—could use" would be a "textual oddity." *Id.* at 237. As a result, the Court found that Congress clearly intended to confer broad standing by using the words "any" and "person." *Id.* Per the Court, "there is 'no basis in text or prior practice' for limiting 'person adversely affected' to mean 'the applicant'—or, for that matter, the 'party' with whom the agency dealt." *Id.* at 238 (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 674-77 (2025)). The majority insists that its interpretation does not limit standing under NRS 533.450(1) to parties to proceedings before the State Engineer, but it nonetheless ignores the statute's intentionally broad language to reach a narrower conception of standing in this context than the text of the statute affords.

As further support for its deliberately broad grant of standing, NRS 533.450(1) allows any person to seek judicial review of an order or decision of the State Engineer "affecting the person's *interests*," not *rights*. NRS 533.450(1). The same reference to interests, as distinct from rights, appears in NRS 533.450(3), which requires a petitioner to notify the State Engineer how the decision or order being challenged "injuriously affects the petitioner's *interests*." If the legislature meant to limit judicial review to decisions or orders affecting the person's rights, it would have written

"rights" instead of "interests" in paragraphs (1) and (3) of NRS 533.450. But it did not.

Nor does it make sense to limit review to persons holding existing rights. Consider NRS 533.325, which lays out the permitting procedure for "any person who *wishes* to appropriate any of the public waters." If the person's application is denied, they may seek judicial review because the denial adversely affects their interests and, perhaps, the priority of any permitted rights they might obtain. *See* NRS 533.355(2). But if the majority's reading holds, that person would not be entitled to review because the denial affects only their interests, not their rights.

Caselaw confirms that standing depends on interests, not rights, affected by the State Engineer's order or decision. For example, we previously allowed a company that owned "ranching and farming operations" in a basin to "seek cancellation" of a speculator's water rights in that basin so that the company could "acquire the water rights to expand its irrigation and agricultural development." *Sierra Pac. Indus. v. Wilson*, 135 Nev. 105, 107, 440 P.3d 37, 39 (2019). The company's farming operations gave it an interest in seeing the speculator's permits canceled so it could acquire the water the permits controlled. This established a competitive interest in groundwater rights—and standing—similar to that Orla asserts here. The majority does not deny the factual similarities in the challengers' positions across these two cases; instead, it attempts to distinguish the present case by stating that *Sierra Pacific* "solely discussed the application of the anti-speculation doctrine in the context of requests for extensions of time" to establish proof of beneficial use and "made no findings in regard to standing." This suggests that the majority views statutory standing as a waivable issue rather than an issue of justiciability or

jurisdiction—otherwise, the *Sierra Pacific* court would have had to first address the petitioner's lack of standing before reaching the merits. *See Heller v. Leg. of State of Nev.*, 120 Nev. 456, 461, 93 P.3d 746, 749 (2004) ("Although neither the Legislature nor the Secretary has addressed standing [under NRS 34.170] in the documents before us, we *necessarily* reach the issue, as it affects our original jurisdiction." (emphasis added)); *Doe v. Bryan*, 102 Nev. 523, 525, 728 P.2d 443, 444 (1986) (discussing standing as an element of this court's "long history of requiring an actual justiciable controversy as a predicate to judicial relief"). For these reasons, I interpret the reaching of the merits in *Sierra Pacific* as an indication that the court saw no standing problem in that case, as the text of NRS 533.450(1) supports.

The only "rights" NRS 533.450(1) refers to are "determined rights." This is a term of art in our water law statutes and refers to adjudicated rights, which are "determined" by the State Engineer then adjudicated by the decree court, as provided in NRS 533.087 through NRS 533.265, statutes that NRS 533.450(1) does not specifically cite. *See In re Water Rights in the Humboldt River Stream Sys.*, 49 Nev. 357, 365, 246 P. 692, 695 (1926) (stating that, "by the term 'administration of determined rights' was contemplated administration in accordance with the terms of the final decree of the court") (construing section 75 of Nevada's water law statute, which became NRS 533.450(1)). The statutes referenced in the "or is made pursuant to" clause of NRS 533.450(1)—NRS 533.270 to NRS 533.445—mainly concern permitted rights, including the PBU requirements stated in NRS 533.395 and 533.400. As written, NRS 533.450(1) provides for review of an order or decision "affecting the person's interests," then describes the kinds of orders or decisions that qualify for

review. To be reviewable, the order or decision need not relate to the "administration of determined rights" at all. In the clause following "affecting the person's interests," NRS 533.450(1) states that the order or decision must *either* relate to "the administration of determined rights" *or* be "made pursuant to NRS 533.270 to 533.445, inclusive, or [certain other statutes]." Orders or decisions relating to the administration of determined rights are just one category of orders or decisions that are subject to review under this statute—and nowhere does the statute specify that under this category, the "determined rights" at issue must belong to the person whose "interests" are "affect[ed]." *See* NRS 533.450(1). The purpose of the clause "when the order or decision relates to the administration of determined rights or is made pursuant to NRS 533.270 to 533.445, inclusive" is not to limit who can petition for judicial review, but rather to clarify which decisions or orders of the State Engineer are subject to review under NRS 533.450(1).

Finally, I do not agree that the conditional relinquishment to which the State Engineer and the NDSL agreed eliminates Orla's standing. The relinquishment statutes the legislature passed in 2025 were not in place when this case was before the State Engineer and the district court and have not been briefed or argued by the parties to this appeal. The relinquishment in this case was not absolute, moreover, but conditional: To resolve the pending PBU dispute between the State Engineer and NDSL, NDSL agreed to relinquish the rights to the State Engineer on the condition that the rights not be subject to reappropriation and that they revert to NDSL if no longer put to recreational use. Whether the new legislation applies to a preexisting conditional relinquishment with a right of reversion seems like a merits question, not one of standing.

In sum, NRS 533.450 is broader than today's opinion suggests. To hold as the majority does is at odds with the statute's plain text and risks denying those impacted by the State Engineer's decisions any clear avenue for redress and review. Nor did the legislature shackle NRS 533.450 to the Nevada Administrative Procedure Act and the caselaw interpreting it. Water law is highly specialized and of the utmost importance to our arid state; it demands specialized treatment in our caselaw, too.

Here, it is clear that Orla is a person seeking judicial review. However, it is less clear that Orla meets the other requirements NRS 533.450(1) establishes for judicial review. The record does not include, for example, the applications Orla alleges it filed for water rights or concrete details describing Orla's interests in the basin. The NDSL, whose conditional relinquishment of water rights the State Engineer accepted in negotiated resolution of NDSL's proof-of-beneficial-use proceeding, is not a party to the proceedings in district court, so we do not have input from them. And, we lack crucial information about the basin's status and thus cannot rigorously analyze whether this decision affects Orla's interests or is purely speculative. Given these gaps, the standing issues this case presents are likely far narrower than today's opinion resolves. Rather than write on a record as scant as this, I would remand to the district court to evaluate Orla's interests and then to determine standing on a complete record under the principles outlined above.

I therefore respectfully dissent.

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A